CBS INC. et al., Plaintiffs,

v.

SPRINGBOARD INTERNATIONAL
RECORDS, Defendant.

No. 75 Civ. 5590.

United States District Court,
S. D. New York.

Feb. 2, 1976.

W. Mallory Rintoul and Ronald E. Guttman, New York City, Jerry Slater, New York City, of counsel, for plaintiffs.

Martin E. Silfen, New York City, for defendant.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs seek an order of this Court preliminarily enjoining defendants from manufacturing, advertising, distributing, selling or offering for sale certain record albums. This relief is sought pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendant has cross-moved pursuant to Rule 12 of the Federal Rules of Civil Procedure: (1) to dismiss the fourth, sixth, seventh, ninth, and tenth claims of plaintiffs' complaint for failure to state a claim upon which relief can be granted, and (2) to dismiss the fifth and eighth claims upon the ground that there would be no pendent jurisdiction over these claims if the previous five claims were to be dismissed. After a hearing held on November 12, 1975, and for the reasons set forth below, the plaintiffs' motion is granted and the defendant's motion is denied.

Plaintiffs herein are CBS Inc. ("CBS"), a New York corporation engaged, *inter alia*, in the manufacture, distribution and sale in interstate commerce of phonograph records and tape recordings; Charlie Rich ("Rich"); Patricia Edwards ("Edwards"); Sarah Dash ("Dash"); and Nona Hendryx ("Hendryx"). The latter four plaintiffs are all recording artists. Defendant is Springboard International Records, Inc. ("Springboard"), a corporation engaged in the manufacture, sale, and distribution of phonograph records and tape recordings.

Plaintiff Rich is a songwriter, recording artist, and entertainer who has, since October 23, 1967, been under exclusive contract to CBS. This contract grants to CBS the exclusive right to manufacture, distribute, and exploit the recordings of Rich and to use his name, picture, and background information in conjunction therewith in the

United States and elsewhere. Prior to his signing with CBS, Rich had been in the recording business for many years, but had enjoyed only mild success. Since signing with CBS, his career has soared. In 1974, Rich was named Country and Western Singer of the Year. During the more recent years of his career, Rich's appearance has changed as has his style. This new image is credited in large part for his success.

Rich alleges that defendant Springboard has released a recording entitled "CHARLIE RICH—THE ENTERTAINER". This record album consists of songs recorded by Rich in the 1950s and 1960s. The cover of the album carries a current likeness of Rich on both the front and back. Rich alleges that nowhere on the record does it indicate that the recordings were made ten or fifteen years ago. While Rich concedes that Springboard has every right to release the recordings in question, he contends that the use of his current likeness will mislead the public and cause the public to think that they are purchasing the current recordings of the performer, when in fact they are purchasing a substantially different product. This he contends will harm both the purchasing public and by harming the public will cause irreparable damage to his reputation. Since CBS has invested large sums of money and much time in developing Rich's image it is alleged that the harm falls on CBS as well.

Plaintiffs Edwards, Dash, and Hendryx are also songwriters and recording artists. They, along with one Cindy Birdsong, formed a singing group known as "Patti LaBelle and the Bluebelles". This group was in existence from 1962 until 1970 when it disbanded. The group enjoyed a measure of success during its existence. They sang a variety of rock, rhythm and blues, and gospel type songs with Edwards singing the lead parts and the others singing backup. Their normal attire was evening wear.

After the demise of "Patti LaBelle and the Bluebelles" plaintiffs Edwards, Dash, and Hendryx formed a singing group known as "LaBelle". Ms. Birdsong was not a member of the new group. According to plaintiffs, the new group was not in any way related to the old enterprise. The women now all sang lead vocals with the effect of creating an entirely new style. Their material was radically changed and their costumes can only be described as "bizarre". Where in the past all of the women had worn the same attire when performing, now their costumes were markedly different. In short, they contend that these two groups were separate and distinct entities.

In March of 1974, Edwards, Dash, and Hendryx all signed exclusive contracts with CBS similar to the contract signed by Rich and described above. Because of the similarity of the contracts and the similarity of the allegations arising therefrom to those raised by Rich, they will not be repeated here in detail. It is sufficient to state that the success of "LaBelle" has been astounding as indicated by an appearance at the Metropolitan Opera House and numerous awards and gold records.

Plaintiffs contend that defendant has released two record albums, one entitled "LA BELLE [sic] & THE BLUEBELLES EARLY HITS" and the other entitled "MERRY CHRISTMAS FROM LA BELLE [sic] & THE BLUEBELLES". These recordings contain songs recorded by "Patti LaBelle and the Bluebelles" during the early 1960s. None of the recordings are those of "LaBelle". Plaintiffs allege that the jackets or covers of the albums bear recent likenesses of "LaBelle" and Edwards as she appears today. Also, they allege that the name "LaBelle" is displayed on the cover in large letters and when read in conjunction with certain textual material on the covers would lead the purchasing public to believe that they were purchasing the recordings of this new, extremely popular group, when in fact they were purchasing the old and outdated recordings of "Patti LaBelle and the Bluebelles". Plaintiffs allege that both individually and in cooperation with CBS they have invested much time and money to develop this new concept and have built a reputation commensurate with their recent

success. They claim that not only will the record purchasing public be misled but also that they will be irreparably harmed in their professional reputation.

Plaintiffs' claims are based on alleged violations of the Lanham Act, 15 U.S.C. § 1125(a). Jurisdiction is predicated upon 15 U.S.C. § 1121 and upon the principles of pendent jurisdiction, 28 U.S.C. § 1338(b).

Defendant contends that the fourth, sixth, seventh, ninth, and tenth claims of plaintiffs' complaint fail to state a claim under the Lanham Act. Defendant alleges that the album "LA BELLE [sic] & THE BLUEBELLES EARLY HITS" announces to the public that the album is comprised of "early hits" and contains textual material which would alert the public that material contained therein is not current. In addition, defendant contends that the album bears the legend "Previously Released On Newtown Records". Defendant alleges that the cover of the album does in fact bear a picture of plaintiff Edwards, and the defendant's label designation and address are also displayed. This, defendant concludes, is sufficient to alert the purchasing public and to undercut plaintiffs' assertions. Defendant contends that there has been no false designation of origin since "origin" refers to the source of manufacture. Here, defendant contends, the origin is with the artist indicated, *i. e.,* the individuals did in fact perform on the offending albums.

Defendant's contentions with regard to the other album of plaintiffs Edwards, Dash, and Hendryx are essentially the same and need not be repeated here as they raise no materially different issues.

Defendant claims that, assuming that it prevails on the first part of its motion, the fifth and eighth claims of the plaintiffs' complaint must fall since they are predicated upon the pendent jurisdiction of this Court.

Since defendant's cross-motion attacks the complaint on jurisdictional grounds, the Court will consider that motion first and then proceed to the plaintiffs' motion for a preliminary injunction, assuming jurisdiction is found to be present.

■ 15 U.S.C. § 1125(a) states:

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

The purpose for which this section was enacted was the protection of consumers and competitors from a wide variety of misrepresentations of products and services in commerce. *Yameta Co. v. Capital Records, Inc.,* 279 F.Supp. 582, 586 (S.D.N.Y.), *rev'd on other grounds,* 393 F.2d 91 (2d Cir. 1968). In enacting the section, Congress in effect created a new federal statutory tort. *Natcontainer Corporation v. Continental Can Co., Inc.,* 362 F.Supp. 1094, 1100 (S.D.N.Y. 1973). The section is clearly remedial and should be broadly construed. *Geisel v. Poynter Products Inc.,* 283 F.Supp. 261, 267 (S.D.N.Y.1968).

■ To constitute an actionable tort under the statute, plaintiff must allege: (1) that "goods or services" are involved, (2) that interstate commerce is affected, and (3) that there is a false designation of origin or a false description or representation. *N. S. Meyer, Inc. v. Ira Green, Inc.,* 326 F.Supp. 338, 341–42 (S.D.N.Y.1971); *American Optical Company v. Rayex Corporation,* 291 F.Supp. 502, 510 n.6 (S.D.N.Y.1967),

*aff'd*, 394 F.2d 155 (2d Cir.), *cert. denied*, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). It should be noted that it is not a prerequisite to the maintenance of an action under this section that the mark be registered. *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1294 (S.D.N.Y.1972).

■ A motion under Rule 12(b)(6) is the usual method for testing the legal sufficiency of the complaint. For the purposes of the motion the well-pleaded material allegations of the complaint and any reasonable inferences to be drawn therefrom are deemed admitted. *Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir. 1967). *See also* 2A J. Moore, Federal Practice ¶ 12.08, at 2265–74. It is well established that

"'[i]n appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ballou v. General Electric Company*, 393 F.2d 398, 399 (1st Cir. 1968), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Plaintiffs' allegations clearly involve "goods or services" and equally clearly allege that those goods or services affect interstate commerce. Defendant does not dispute these allegations. Defendant mistakenly contends, however, that the alleged violation will not cause confusion among the purchasing public as to "source of origin". Clearly, plaintiffs do not rely on this portion of the statute, but rather rely on the "false description or representation" wording. *See American Optical Company v. Rayex Corporation, supra*, 291 F.Supp. at 510 n.6. Thus, the case of *Hagood v. Springboard International Records, Inc.*, 75 Civ. 34 (S.D.N.Y June 20, 1975), cited by defendant has no application here. There is no requirement that plaintiff show that the misrepresentation was willful or intentional. *CBS, Inc. v. Gusto Records, Inc.*, 403

F.Supp. 447, 448 (M.D.Tenn.1974); *Apollo Distributing Company v. Apollo Imports, Inc.*, 341 F.Supp. 455, 458 (S.D.N.Y.1972). It is sufficient for the plaintiff to allege that the public may be deceived. *Apollo Distributing Company v. Apollo Imports, Inc., supra*, 341 F.Supp. at 458.

■ This Court is satisfied that plaintiffs have sufficiently alleged the requisite elements of a Lanham Act violation to carry them over defendant's cross-motion to dismiss since they have alleged that the records in question which circulate in interstate commerce are likely to lead the public to believe that they are purchasing a product substantially different from the product they think they are purchasing.

■ Since the Court has sustained jurisdiction as to the statutory claims, it will not dismiss the pendent claims since they arose out of the same factual fabric.

■ In considering the application for a preliminary injunction, the Court adheres to the standards recently restated by the Court of Appeals for the Second Circuit:

"The standard factors which this court now considers upon an application for a preliminary injunction are well known: (1) clear likelihood of success on the law and the facts then available and possible irreparable injury, or (2) sufficiently serious questions on the merits making them fair ground for litigation and a balance of the equities tipping decidedly in favor of preliminary relief." *Columbia Pictures Industries, Inc. v. American Broadcasting Companies, Inc.*, 501 F.2d 894, 897 (2d Cir. 1974).

In reaching its determination on the propriety of granting the preliminary injunction, the Court is immeasurably aided by two recent decisions which are very nearly on all fours with the instant case. In *CBS, Inc. v. Gusto Records, supra*, 403 F.Supp. 477, two of the instant plaintiffs, CBS and Rich, sought to enjoin a similar alleged Lanham Act violation. As in the instant case, defendant Gusto Records, Inc. had released a record containing songs recorded by Rich some ten or fifteen years prior, but

bearing a current picture of Rich on the record album cover. In holding that a sufficient Lanham Act violation was made out to support the issuance of an injunction, the court noted:

"The recordings . . . are primarily songs which were recorded by Mr. Rich some ten to fifteen years ago, prior to his current fame and success. Mr. Rich's singing style at that time was considerably different from his style of today . . . .. The songs in question were originally recorded monaurally; defendant has 'overdubbed' the originals in order to create a stereo effect. There is some dispute as to whether the album qualifies as a true stereo album . . . .. Prominently displayed on the front cover is a current picture of Mr. Rich, which creates the impression that the recordings have been made recently." *Id.* at 448

The court went on to note:

"Totally absent from either side of the cover is any information which would inform the consumer that the recordings contained in the album were recorded over a decade ago. Even if the consumer were an unusually informed country music fan and knew when the songs were originally recorded by Mr. Rich, he would have no way of knowing that they had not been rerecorded by the now successful Mr. Rich, in keeping with his current style. In fact, the impression conveyed is to the contrary. The record albums are sealed, and an expert witness testified at the hearing that a customer has no way of hearing the record prior to purchase in the usual retail situation.

"For the foregoing reasons, this court can only conclude that the packaging tends to falsely describe the contents of the record album, in violation of Section 43(a) of the Lanham Act." *Id.* at 449.

The court also found the prospect of irreparable harm to be quite real since the public might well purchase the albums in question only to be disappointed at not finding current Rich recordings, and turn that disappointment toward Mr. Rich, feeling that he had perpetrated the deception. This, the court concluded, might well damage Rich's reputation and popularity.

■ Also of value is the decision of Judge MacMahon of this court in *Rich v. RCA Corporation,* 390 F.Supp. 530 (S.D.N.Y.1975). Once again Rich and CBS sought a preliminary injunction restraining the manufacture, distribution, or sale of a recording containing songs recorded by Rich over a decade ago, but bearing a current photo. Judge MacMahon quite rightly pointed out that for the purposes of a preliminary injunction it was not necessary to show actual deception of the public, but merely the likelihood of deception or confusion. *Id.* at 531. The court there found that the public was likely to be deceived since the records were without prominent notation that the songs on the album were recorded many years ago. The one reference that the songs were "previously released selections" was held by the court to be inadequate. *Id.* The holding with regard to the issue of irreparable harm was substantially the same as in *CBS, Inc. v. Gusto Records, Inc., supra,* 403 F.Supp. 447.

In the instant case there is no dispute that defendant has the right to release these songs. The only dispute arises over the possible deception to the public which may occur if these old recordings are packaged with a current picture of the artist on the cover and no clear indication that they are songs recorded over a decade ago.

■ It is not disputed herein that the songs in question are some ten or fifteen years old and that the photos displayed on both the front and back covers of the album are current. There is also no dispute that the use of the photos is not authorized by Rich. Also, while the label indicates stereo, there is undisputed testimony that the recording is monaural, "overdubbed" to give a stereo effect. The Court finds that since his signing with CBS, Rich has undergone a substantial change both in his appearance and in his stylistic approach to his music. There is no question that Rich's career has skyrocketed and his general recognition by the public has increased manifestly during this period.

The Court can only conclude that the consumer, confronted with the album as presented to the Court, would very likely think he was purchasing the contemporary Charlie Rich, when in fact he was getting a substantially different product. Having been thus deceived, it would reasonably follow that the angry consumer would direct that anger toward Rich. Thus, the Court must also conclude that Rich's reputation and hard-earned popularity could suffer. Having thus found that the plaintiff has amply demonstrated a likelihood of success on the merits and possible irreparable injury, the Court will grant the motion as to Rich.

 With regard to the motion by plaintiffs Edwards, Dash, and Hendryx, little need be said. This situation is by far the more egregious. Here we have two entirely different singing groups. The partial identity of performers is of no relevance here since the stylistic difference between the groups is so great. To compare "Patti LaBelle and the Bluebelles" and "LaBelle" is to compare Lawrence Welk and the Rolling Stones. The comparison is ridiculous. Defendant claims that the public will not be misled since the albums are labelled "La Belle and the Bluebelles". There has never been such a group. The Court can glean no other reason for this misnomer than the desire to ride the crest of the current critical and popular acclaim enjoyed by "La-Belle". The separation and placement of the notation "La Belle" at the top of the front cover of the Christmas Album and the totally disproportionate notation of the name "La Belle" on the Early Hits Album further buttresses this conclusion. Further, both albums lack any appropriate dates. Finally, the inscriptions "These Recordings Have Been Previously Released" and "Previously Released On Newtown Records" respectively are the smallest and least conspicuous notations on the albums.

The Court can only conclude that the unwary consumer, and even the fairly sophisticated consumer, could well think they were purchasing the recording of "LaBelle" when in fact they were getting a cobweb-covered conglomeration of past recordings. On the issue of irreparable harm, the Court must conclude, as it did with plaintiff Rich above, that the damage to the reputation which is likely to be the by-product of consumer deception would irreparably harm these plaintiffs.[1]

Accordingly, defendant's cross-motion to dismiss is denied in all respects. The motion of all plaintiffs for a preliminary injunction is granted. Defendant is directed to affix to the cover of each offending record album a label two (2) by three (3) inches in dimension bearing the inscription "These Songs Were Recorded Over Ten Years Ago" in bold letters. A label of appropriate dimension shall be affixed to each offending tape recording and advertisement. Submit an order in conformity with this memorandum on five (5) days notice.

1. Defendant has claimed that plaintiffs' request for a preliminary injunction should be denied on the basis of laches. It is clear to the Court that the delay in this case was occasioned by the settlement negotiation which was in progress and not by any unreasonable delay on the part of plaintiffs.

Defendant has also claimed that plaintiff Rich has acquiesced in the use of his likeness on various other albums and that this would bar the prosecution of this action. On the contrary, both of the actions upon which this Court relied in reaching the instant decision were brought by CBS and Rich, and this claim is both irrelevant and inaccurate. *See CBS, Inc. v. Gusto Records, Inc., supra,* 403 F.Supp. 447; *Rich v. RCA Corporation, supra,* 390 F.Supp. 530.