670 F.2d 642
 214 U.S.P.Q. 15
 FRISCH'S RESTAURANTS, INC., Plaintiff-Appellee, Cross-Appellant,
v.
ELBY'S BIG BOY OF STEUBENVILLE, INC.; the Boury Corporation;
Elby's Family Restaurants, Inc.; Elby's Commissionary, Inc.;
George Boury, Ellis Boury and David Carr,
Defendants-Appellants, Cross-Appellees.
 Nos. 81-3095, 81-3098.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 1, 1981.
Decided Feb. 3, 1982.
 
 Keith A. Sommer, Sommer & Antill, Martins-Ferry, Ohio, Arthur M. Recht, Ray A. Byrd, Schrader, Stamp, Byrd, Byrum Johnson & Companion, Wheeling, W. Va., Thomas J. Collin, Thompson, Hine & Flory, Cleveland, Ohio, for defendants-appellants, cross-appellees.
 Gary D. Greenwald, Carl Genberg, Schottenstein, Zox & Dunn, Columbus, Ohio, for plaintiff-appellee, cross-appellant.
 Before WEICK* and BROWN, Circuit Judges, and PRATT, District Judge.**
 BAILEY BROWN, Circuit Judge.
 
 
 1
 Marriott Corporation is the owner of the "Big Boy" trademark and service mark, which is used by a network of family restaurants around the country. The plaintiff, Frisch's Restaurants, Inc. (Frisch's), has the exclusive license from Marriott to use these marks in Ohio and currently operates eighty restaurants in Ohio under the Big Boy trademark. One of the defendants, The Boury Corporation, operates the network of "Elby's Family Restaurants" in western Pennsylvania (five restaurants), northern West Virginia, referred to in the record as "the panhandle," (seven restaurants), and eastern Ohio (eight restaurants in six different cities). The Boury Corporation holds the exclusive right to use the Big Boy trademark in the panhandle of West Virginia and in most of western Pennsylvania. Prior to 1971, the Elby's Restaurants in eastern Ohio were authorized under a franchise agreement with Frisch's to use the Big Boy trademark, but that agreement was terminated at Elby's request in late 1971.
 
 
 2
 When the Ohio Elby's restaurants continued to use the Big Boy trademark after the franchise agreement was terminated, Frisch's sought and obtained a preliminary injunction from the West Virginia Supreme Court of Appeals in 1973, enjoining the Ohio Elby's organization from using the Big Boy trademark "in any manner whatsoever in connection with (Elby's) business operations within the State of Ohio." The Ohio Elby's restaurants have avoided using the Big Boy trademark in their restaurants and in Ohio advertising media since that time. However, the present action by Frisch's challenges the spillover effects of Elby's West Virginia advertising utilizing the Big Boy trademark. This advertising reaches eastern Ohio consumers and allegedly creates the false impression that Big Boy products are available at the Ohio Elby's restaurants as well as Elby's West Virginia operations.
 
 
 3
 The Ohio and the West Virginia Elby's restaurants conduct joint advertising and promotional campaigns under the direction of the parent corporation. A major avenue of media advertisement is the Wheeling, West Virginia television station WTRF. Most of Elby's commercials on WTRF which advertise for the entire chain contain a pictorial representation of the Big Boy figure,[1] advertise "Big Boy" food items, or contain jingles which strongly identify all Elby's Family Restaurants with the Big Boy trademark. However, whenever a specific Ohio Elby's restaurant is advertised on WTRF or another West Virginia medium, no reference to the Big Boy trademark is made.
 
 
 4
 The WTRF signal is broadcast from Bridgeport, Ohio, across the Ohio River from Wheeling, West Virginia, and is widely received by television viewers in certain counties in the eastern portion of Ohio. Under their reciprocal advertising agreements with WTRF, the Ohio Elby's restaurants have erected billboards on their restaurant properties directing the attention of their Ohio customers to Elby's advertisements on station WTRF. These Ohio Elby's restaurants also utilize various in-store promotional devices, including matchbooks and sugar packets, advertising station WTRF.
 
 
 5
 The Elby's chain also places newspaper advertisements in newspapers published in Wheeling, West Virginia which have considerable circulation in the counties of eastern Ohio where the Elby's restaurants are located. These advertisements publicize food items and specials available at all Elby's Family Restaurants with the aid of the Big Boy trademark.
 
 
 6
 Frisch's filed a complaint against the Elby's organization and related corporations in an Ohio state court on November 27, 1978, alleging federal trademark infringement, breach of its prior franchise agreement with the Ohio Elby's restaurants, and a violation of Ohio's "Deceptive Trade Practices Act." Elby's removed the action to the United States District Court for the Southern District of Ohio. Frisch's amended its complaint on February 21, 1980, adding state law trademark infringement and common law unfair competition as well as § 43(a) of the Lanham Act (15 U.S.C. § 1125(a) (1976)) claims to its previous allegations. Frisch's had previously demanded a permanent injunction against Elby's advertisements; its amended complaint sought for the first time a preliminary injunction.
 
 
 7
 Frisch's moved for a preliminary injunction on October 21, 1980, requesting that Elby's be enjoined from using the Big Boy trademark in "any advertising medium that reaches a not insubstantial number of Ohioans" without disclosing Ohio Elby's disaffiliation with the Big Boy restaurant organization. On January 20, 1981, District Judge Robert M. Duncan, in an opinion reported at 514 F.Supp. 704 (S.D.Ohio 1981), issued a preliminary injunction enjoining Elby's from "using the 'Big Boy' trademark and service mark in their WTRF advertising without making a prominent disclosure that the Elby's Family Restaurants within the state of Ohio are not associated with the 'Big Boy' restaurant organization. Alternatively, defendants may wish to eliminate all reference to the 'Big Boy' mark on WTRF advertisements." Id. at 712. Judge Duncan based his holding solely on "the unfair competition provisions of (§ 43(a) of) the Lanham Act, 15 U.S.C. § 1125(a)," id., and expressed no view on Frisch's alternative theories of recovery. However, Judge Duncan refused to extend his preliminary injunction to Elby's newspaper and radio advertisements, noting that Frisch's failed to establish a "causal connection between the public's confusion (the confusion of eastern Ohio consumers over the availability of Big Boy products at Ohio Elby's restaurants) and defendants' advertising in such media." Id. at 711 (emphasis in original). Elby's has appealed the grant of the WTRF preliminary injunction, and Frisch's cross-appealed the district court's failure to enjoin Elby's newspaper advertisements.[2]
 
 
 8
 Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), provides:
 
 
 9
 Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 
 
 10
 The intent of the Lanham Act is set forth in § 45 thereof, 15 U.S.C. § 1127 (1976):
 
 
 11
 The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce ... (and) to protect persons engaged in such commerce against unfair competition ....
 
 
 12
 It has been suggested that § 43(a) of the Lanham Act "created a sui generis federal statutory cause of action for 'false representation,' " Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 702 (5th Cir. 1981). The Fifth Circuit also concluded that " § 43(a) proscribes not only what had been considered 'false advertising' but also what had been differentiated as 'unfair competition.' " Id. In addition, the Chevron Chemical court described the distinctions between these two concepts:
 
 
 13
 In sum, the essential misrepresentation in "false advertising," which we have noted forms the basis of the "false representation" leg of § 43(a), is fundamentally different from the essential misrepresentation in "unfair competition": in the former case, the defendant makes no secret of the origin of the goods in himself, but merely misrepresents certain qualities or characteristics that his goods may or may not have; in the latter case, the defendant misrepresents his goods to be those of another.
 
 
 14
 Id. at 701 (footnote omitted).
 
 
 15
 It is undisputed that Elby's has a right to use the Big Boy trademark in connection with its West Virginia operations; indeed, it has an obligation to promote the Big Boy trademark in the panhandle of West Virginia under its licensing agreement with Marriott. It is also undisputed that the Ohio Elby's restaurants have no right to use the Big Boy trademark. Frisch's contends that the Ohio Elby's restaurants, through their participation in Elby's West Virginia advertisements which have substantial exposure in eastern Ohio, are improperly using the Big Boy trademark to promote their products, thereby creating a "false designation of origin" or a "false description or representation" of their goods as being sponsored by the Big Boy organization in the minds of Ohio consumers in violation of § 43(a).
 
 
 16
 We conclude that Frisch's contentions are properly within the scope of § 43(a) of the Lanham Act. Frisch's primary concern is that Ohio consumers will assume that all Elby's restaurants, including the Ohio Elby's, sell food which is sponsored by or originates from the "Big Boy" chain of restaurants. This court previously concluded that false representations about the "origin of source or manufacture" of goods are prohibited by the "false designation of origin" clause of § 43(a). Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 408 (6th Cir. 1963). "(F)alse representations of the source of a product constitute the common-law tort of 'unfair competition,' or, as it is otherwise known, 'passing off.' " Chevron Chemical Co., supra, at 701.[3] Passing off involves "defendant's use of plaintiff's well-known product name, symbol, or familiar packaging to attract the public to the product under the assumption that it is the plaintiff's product which is bought." Comment, The Present Scope of Recovery for Unfair Competition Violations Under Section 43(a) of the Lanham Act, 58 Neb.L.Rev. 159, 163 (1978). As we have previously determined, attempts at passing off are prohibited by § 43(a); indeed, the Lanham Act provides:
 
 
 17
 a right of action to persons engaged in interstate and foreign commerce, against ... deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a manufacturer or merchant to identify his goods and distinguish them from those manufactured by others, where such misleading use is carried on, in the channels of interstate and foreign commerce, which is subject to regulation by Congress.
 
 
 18
 Federal-Mogul-Bower Bearings, supra at 409.
 
 
 19
 The district court properly held that the standard of proof needed to prevail in a § 43(a) action for injunctive relief was a showing of "likelihood of confusion."
 
 
 20
 Although it is necessary to prove that the buying public was actually deceived in order to recover damages under § 43(a) of the Lanham Act, Skil Corp. v. Rockwell International Corp., 375 F.Supp. 777 (N.D.Ill.1974), only a likelihood of confusion or deception need be shown in order to obtain equitable relief. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., (604 F.2d 200 (2d Cir. 1979) ). Here, since equitable relief is sought, only the likelihood of confusion need be shown, and not proof of actual confusion as was required by the District Court.
 
 
 21
 Warner Bros., Inc., supra at 79. This likelihood of confusion need not arise from intentional conduct; furthermore, a mere showing that advertisements tend to create a false impression is sufficient to warrant injunctive relief.
 
 
 22
 Under § 43(a) of the Lanham Act it is not necessary to show that any false description or representation is wilful or intentional. Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir. 1958). All that is required is that the representation or descriptions either be "false" or such as is "tending falsely to describe or represent the goods or services in question." Ames Publishing Co. v. Walker-Davis Publications, Inc., 372 F.Supp. 1, 11 (E.D.Pa.1974). Thus, liability is not restricted solely to descriptions which are literally false, but extends to instances where the defendant creates a false impression. Id.
 
 
 23
 Walker-Davis Publications, Inc. v. Penton/IPC, Inc., 509 F.Supp. 430, 435 (E.D.Pa.1981).[4]
 
 
 24
 In Toho Company, Ltd. v. Sears, Roebuck & Co., 645 F.2d 788 (9th Cir. 1981), the Ninth Circuit delineated eight factors which are helpful in demonstrating that there is a likelihood of confusion among consumers:
 
 
 25
 In AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979), we set forth eight factors that are relevant to the likelihood of confusion:
 
 
 26
 1. strength of the plaintiff's mark;
 
 
 27
 2. relatedness of the goods;
 
 
 28
 3. similarity of the marks;
 
 
 29
 4. evidence of actual confusion;
 
 
 30
 5. marketing channels used;
 
 
 31
 6. likely degree of purchaser care;
 
 
 32
 7. defendant's intent in selecting the mark;
 
 
 33
 8. likelihood of expansion of the product lines.
 
 
 34
 Id. at 790.
 
 
 35
 In considering these factors, the unique factual setting with which we are concerned militates strongly towards likelihood of confusion. Although the strength of the Big Boy mark was not addressed by the district court, we presume that it is a distinctive and desirable mark from Elby's attempts to implant in the public mind the idea that all of its restaurants are affiliated with the Big Boy mark. The parties are competing restaurant chains using the identical trademark to promote related if not identical goods; additionally, it is likely that the marketing methods used to promote the fast-food products served by both chains are substantially similar. All these factors contribute to the likelihood of confusion about the Ohio Elby's restaurants' association with the Big Boy trademark.
 
 
 36
 The district court determined that there was actual confusion among eastern Ohio consumers about the availability of Big Boy products at Ohio Elby's restaurants. 514 F.Supp. at 708-09. This finding was supported by evidence from Frisch's expert witness, who testified about a survey he conducted which indicated that Elby's television advertisements contributed to confusion over the connection of the Big Boy organization with the Ohio Elby's restaurants. The Fifth Circuit deduced that while "evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).[5]
 
 
 37
 The casual "degree of purchaser care" in selecting fast-food restaurants also supports a conclusion of likelihood of confusion. The "fast-food" products promoted by Elby's are not likely to be the object of intensive consumer research, but rather subject to "impulse buying;" therefore, it is highly unlikely that Ohio consumers will discover their mistake about the availability of Big Boy products in Ohio Elby's restaurants before patronizing Elby's.
 
 
 38
 The Fifth Circuit's comments on the intent factor are equally supportive of likelihood of confusion:
 
 
 39
 Intent: we stated in Amstar that the "intent of defendants in adopting (their mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity." Amstar Corp., supra, 615 F.2d at 263 (emphasis added).
 
 
 40
 Chevron Chemical Co., supra at 703-04. The district court found that "the defendants intentionally associate Ohio Elby's restaurants with the 'Big Boy' mark," since "the Ohio Elby's restaurants are in fact direct participants in the reciprocal advertising agreement with WTRF," they "actively encourage Ohio consumers to 'watch for Elby's specials on WTRF' ... where the television advertisement frequently identifies the Elby's Family Restaurant with the 'Big Boy' mark" and "(a) variety of in-store promotional material including matchbooks and sacks also directs the Ohio consumer to WTRF." 514 F.Supp. at 710. The district court correctly inferred that Elby's improperly intended to "derive benefit" from the Big Boy trademark for their Ohio operations through coupling the entire chain to the trademark.
 
 
 41
 Finally, the past association of the Ohio Elby's restaurants with the Big Boy trademark through their expired licensing agreement with Frisch's increases the likelihood that consumers would be confused about whether the Ohio Elby's restaurants continued to be linked with the Big Boy organization. It is evident from their actions that the Ohio Elby's restaurants hoped to reinforce the residual effects of Ohio consumer memories of their past affiliation with the Big Boy trademark by trying in with the legitimate West Virginia Big Boy advertisements, thereby obscuring their disaffiliation with the Big Boy trademark.
 
 
 42
 The preceding factors led the district court to conclude that a likelihood of confusion existed with regard to Elby's television advertisements. However, Elby's contends that the district court erred in even applying § 43(a) to the facts of this case, and broadly attacks the district court's ruling.
 
 
 43
 Elby's first argues that Frisch's does not have standing to bring this suit because Frisch's does not operate any restaurants in the eastern Ohio area where the confusion about Big Boy products is prevalent. However, it is evident that Frisch's suffers a cognizable injury in this instance because it would have to combat consumer misperceptions about the availability of Big Boy products if it were to expand into the area itself or license restaurants in that area to operate under the Big Boy trademark. The Ohio Supreme Court has recognized that a trademark is entitled to protection throughout the entire state even though its owner is currently operating only in one part of the state. Younker v. Nationwide Mutual Ins. Co., 175 Ohio St. 1, 191 N.E.2d 145 (1963). More to the point, this court in Socony-Vacuum Oil Co. v. Oil City Refiners, Inc., 136 F.2d 470 (6th Cir.), cert. denied, 320 U.S. 798, 64 S.Ct. 369, 88 L.Ed. 482 (1943), determined that the user of a trademark "was entitled to the exclusive use of the name within the entire state as territory which may reasonably be anticipated to be within normal business expansion ...." Id. at 475. Accord, Grocers Baking Co. v. Sigler, 132 F.2d 498, 502 (6th Cir. 1942).
 
 
 44
 The issue of standing to sue under § 43(a) is closely related to the statute's declaration that a § 43(a) plaintiff includes one "who believes that he is or is likely to be damaged by the use of any such false description or representation." 15 U.S.C. § 1125(a) (1976). The Second Circuit explained the burden of proof such a plaintiff must meet to be entitled to injunctive relief:
 
 
 45
 On the one hand, despite the use of the word "believes," something more than a plaintiff's mere subjective belief that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief. See, Chromium Industries v. Mirror Polishing & Plating, 448 F.Supp. 544, 554 (N.D.Ill.1978); D. M. Antique Import Corp. v. Royal Saxe Corp., 311 F.Supp. 1261, 1269 n. 6 (S.D.N.Y.1970). On the other hand, as the district court in this case recognized, a plaintiff seeking an injunction, as opposed to money damages, need not quantify the losses actually borne.
 
 
 46
 Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189 (2d Cir. 1980).
 
 
 47
 The Second Circuit further elaborated on these requirements:
 
 
 48
 The statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising. The correct standard is whether it is likely that Carter's advertising has caused or will cause a loss of Johnson sales, not whether Johnson has come forward with specific evidence that Carter's ads actually resulted in some definite loss of sales. Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 649 (3d Cir. 1958); Ames Publishing Co. v. Walker- Davis Publications, Inc., 372 F.Supp. 1, 13 (E.D.Pa.1974); 2 J.T. McCarthy, Trademarks and Unfair Competition § 27:5 at 249-50 (1973). Contrary to Johnson's argument, however, the likelihood of injury and causation will not be presumed, but must be demonstrated. If such a showing is made, the plaintiff will have established a reasonable belief that he is likely to be damaged within the meaning of § 43(a) and will be entitled to injunctive relief, as distinguished from damages, which would require more proof.
 
 
 49
 Id. at 190. In this instance, where Frisch's has demonstrated that it has a cognizable interest in protecting its Ohio trademark rights, and a showing of a likelihood of confusion about the origin and sponsorship of the products of Ohio Elby's restaurants has been made, Frisch's has demonstrated the "likelihood of injury and causation" for injunctive relief, without the need for showing an actual loss of business to Frisch's restaurants.
 
 
 50
 Elby's also protests the imposition of an injunction requiring disclosures under § 43(a), claiming that § 43(a) does not cover its failure to disclose that its Ohio restaurants are not connected with the Big Boy trademark. However, the district court found that
 
 
 51
 the Ohio Elby's affirmative participation in the WTRF reciprocal advertising campaign involves far more than simple nondisclosures and is accordingly within the purview of Section 43(a) .... Standing alone, neither the Ohio Elby's WTRF billboards nor the advertisements on WTRF-TV say that Ohio Elby's are "Big Boy" restaurants. Functioning together, however, the billboards and TV advertisements create the likely impression in the consumer that "Big Boy" products are available at Ohio Elby's.
 
 
 52
 514 F.Supp. at 710. When Elby's advertisements reached the Ohio consumers, they affirmatively misrepresented an affiliation of the local Elby's restaurants in Ohio with the Big Boy trademark. Since Elby's was directly responsible for the false impressions generated about the Ohio Elby's restaurants' connection with Big Boy products, it was properly within the district court's discretion to require Elby's to disclose information that would correct those false impressions. See, e.g., CBS Inc. v. Springboard International Records, 429 F.Supp. 563 (S.D.N.Y.1976), CBS, Inc. v. Gusto Records, Inc., 403 F.Supp. 447 (M.D.Tenn.1974) (district courts ordered disclosures about release of collection of old Charlie Rich songs).
 
 
 53
 The district court was accordingly justified in determining that a "likelihood of confusion" existed, warranting injunctive relief against Elby's television advertisements.
 
 
 54
 The district court, however, failed to properly utilize the "likelihood of confusion" standard with respect to Elby's newspaper and radio advertisements: "Plaintiff's proof relative to defendants' advertising in newspapers and on radio is not sufficient to establish a causal connection between the public's confusion and defendants' advertising in such media. No proof comparable to the Becker Study has been presented for other media." 514 F.Supp. at 711. Because Frisch's did not prove through its consumer survey that Ohio consumers were actually confused by Elby's newspaper advertisements, the district court concluded that "likelihood of confusion" was not present. As before pointed out, however, the existence of actual confusion is only one factor in determining whether likelihood of confusion is present.
 
 
 55
 This failure by the district court properly to apply the likelihood of confusion standard to the newspaper advertising was an error of law and therefore, to this extent, an abuse of discretion. United States v. Colahan, 635 F.2d 564 (6th Cir. 1980), cert. denied, --- U.S. ----, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981). The question remains, however, whether a reversal and remand for a further factual determination is required or whether this court can determine on this record that Frisch's is entitled to injunctive relief as to the newspaper advertising.
 
 
 56
 The Ninth Circuit has developed a two-level test for reviewing lower court findings of likelihood of confusion.
 
 
 57
 In assessing whether there is likelihood of confusion, a court first considers numerous factors and then, based thereon, determines whether there exists a likelihood of confusion. With the analysis so structured, the J. B. Williams (Co., Inc. v. Le ContEe Cosmetics, Inc.; 523 F.2d 187 (9th Cir.) ), and AMF, Inc. courts held that the determination of what is the state of affairs regarding each factor (a "foundational fact") is a finding of fact reviewed on the clearly erroneous standard, but the further determination of likelihood of confusion based on those factors is a legal conclusion. See J. B. Williams, 523 F.2d at 191-92; AMF, Inc., 599 F.2d at 348-54 (applying two-level test as described here).
 
 
 58
 Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443-44 (9th Cir. 1980).
 
 
 59
 Applying this test, with which we agree, to the facts that are not in dispute and as found by the district court, we conclude that Frisch's is entitled to injunctive relief as to the newspaper advertising. Even without evidence of actual consumer confusion, examination of the other factors which are not in dispute, i.e., intent, likely degree of purchaser care, and the unavoidable confusion resulting from the use of identical trademarks in similar marketing channels, inexorably leads to the "legal conclusion" that confusion is just as likely to result from Elby's newspaper advertisements as from their television advertisements. See, e.g., Chevron Chemical Co., supra at 705 ("the lack of evidence of actual confusion did not militate strongly against a finding of likelihood of confusion" when the other factors were also taken into account). Furthermore, the district court did find as a foundational fact that there was actual confusion among Ohio consumers about the availability of Big Boy products in Ohio Elby's restaurants; the only dispute concerned the causes of that confusion. In determining the proper scope of relief, we should recall that " § 43(a) of the Lanham Act is remedial in nature, and should be interpreted and applied broadly so as to effectuate its remedial purpose." Warner Bros., supra at 79. Because the ultimate determination of "likelihood of confusion" is a legal conclusion reviewable de novo by this court, J. B. Williams Co. v. Le Conte Cosmetics, Inc., 523 F.2d 187, 190 (9th Cir. 1975), cert. denied, 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976), it is unnecessary to remand this case to the district court for further consideration.
 
 
 60
 A final issue raised by Elby's is whether the particular requirements for a preliminary injunction are met here. The legal standard governing the grant of a preliminary injunction under § 43(a) is clear.
 
 
 61
 There must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.
 
 
 62
 Warner Bros., supra at 78. It is obvious to this court that Frisch's has shown a likelihood that it will succeed on the merits of this case. We are also convinced that Frisch's has demonstrated irreparable harm, since it has a "substantial financial interest at stake" in its exclusive use in Ohio of the Big Boy trademark, it has "incurred great expense" in promoting that trademark in Ohio, and "its licensing program will lose much of the confidence reposed in it by (its) licensees" if they view Frisch's as unwilling to protect the exclusivity of its licenses. Id. at 79. Although it is true that "(a) preliminary injunction imports a degree of urgency (and) ... should not be available to the plaintiff who slumbered on his rights," 4 R. Callman, Law of Unfair Competition, Trademarks & Monopolies § 88.3(b) at 206 (3d ed. 1970), it appears to us that Frisch's properly asserted its legal rights from the beginning through its litigation in the West Virginia state courts, and it undoubtedly hoped to defend its interests in that forum without the need of proceeding in another forum. We recognize Frisch's delay in moving for a preliminary injunction after the present action was originally filed; however, it so moved a few months after it filed its amended complaint.[6] We do not believe the district court abused its discretion in granting the preliminary injunction in spite of this delay.
 
 
 63
 The district court's order granting a preliminary injunction as to Elby's television advertisements is therefore affirmed, while we reverse on the issue of newspaper advertisements and remand for entry of such preliminary injunction.
 
 
 
 *
 On December 31, 1981 Judge Weick retired from regular active service under 28 U.S.C. § 371(b) and became a Senior Circuit Judge
 
 
 **
 The Honorable Philip Pratt, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This boy is rather chubby and somewhat cherubic in appearance
 
 
 [2]
 The district court specifically declined to grant injunctive relief concerning Elby's newspaper and radio advertisements. While Frisch's notice of appeal is broad enough to cover the failure to grant relief as to radio as well as newspaper advertisements, Frisch's briefs on appeal have only addressed the issue of Elby's newspaper advertisements
 
 
 [3]
 The Fifth Circuit has tied passing off to the "false description or representation" strand of § 43(a), contending that a "false designation of origin" refers only to misrepresentations of geographic origin and not manufacture or source origin. Chevron Chemical, supra at 700. However, this court held that passing off can be considered a "false designation of origin." Federal-Mogul-Bower Bearings, supra at 408. Nevertheless, whether characterized as a "false description or representation" or a "false designation of origin," there is no disagreement that § 43(a) would apply to prohibit an attempt by Elby's to pass off the food products of its Ohio restaurants as Big Boy sponsored goods. See, e.g., Chevron Chemical, supra; Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981) (toy manufacturer's attempt to pass off its toy automobiles as sponsored by popular television series prohibited by § 43(a)); Federal-Mogul-Bower Bearings, supra
 
 
 [4]
 Accord, CBS, Inc. v. Springboard International Records, 429 F.Supp. 563 (S.D.N.Y.1976); CBS, Inc. v. Gusto Records, Inc., 403 F.Supp. 447 (M.D.Tenn.1974); Rich v. RCA Corp., 390 F.Supp. 530 (S.D.N.Y.1975) (release of collection of old Charlie Rich recordings done in his old style with a current photograph of Charlie Rich on the cover created false impression that record was done in Rich's contemporary style; violation of § 43(a) found by three separate district courts); J. McCarthy, Trademarks & Unfair Competition, § 27:7 at 255 (1973) ("(Section) 43(a) does not require literal falsity for liability"); Germain, Unfair Trade Practices Under Section 43(a) of the Lanham Act: You've Come a Long Way, Baby-Too Far, Maybe?, 49 Ind.L.J. 84, 96 (1973) (" 'literal' truth is probably not a defense (to a § 43(a) claim). A false impression may be found to violate the section ...."
 
 
 [5]
 Indeed, it is difficult to conceive of a situation where a showing of substantial actual confusion would not result in a legal conclusion of likelihood of confusion. This is not a case involving "minimal" or "isolated" instances of actual confusion such as were involved in Amstar Corp., supra at 263
 
 
 [6]
 Evidently Frisch's sought a preliminary injunction when it became apparent that docket constraints in the district court would preclude a plenary hearing for an extended period of time. Instead of slumbering on its rights, Frisch's sought to draw the court's attention to its dilemma as soon as practicable by applying for a preliminary injunction