## ROHO, INC.

v.

## Charles MARQUIS, Individually and d/b/a Chase Air Flotation and Chase Orthopaedic Care, Inc.

Civ. A. No. 89–2854.

United States District Court, E.D. Louisiana.

July 10, 1989.

Edward D. Markle, Trial Atty., Ashley L. Belleau, Adams & Reese, New Orleans, La., Suelthaus & Kaplan, William L. Sauerwein, Gerard F. Hempstead, St. Louis, Mo., for Roho, Inc.

Carmouche & Gray, A.J. Gray III, Lake Charles, La., for defendants.

*Supplemental Order and Reasons*

ARCENEAUX, District Judge.

On July 7, 1989 after a hearing, consideration of testimony, evidence and applicable law, the Court, in open court, ordered (1) that the plaintiff's Motion for Preliminary Injunction be granted; (2) that the Temporary Restraining Order currently in effect in this matter be extended until July 10, 1989 at 5:00 P.M. and (3) that plaintiff's counsel submit to the Court, after conferring with defendant's counsel, a proposed Order for Preliminary Injunction by noon of July 10th. Herein are written reasons to supplement the Court's ruling from the Bench.

*Background*

Roho, Inc. ("Roho"), a Delaware corporation with its principal place of business in Illinois and doing business in Louisiana, is a manufacturer of cushions with a technology using a series of air pockets that provide support. Plaintiff manufactures these cushions for use on wheelchair seats and as mattresses for hospital beds. All Roho products are constructed from a black rubber material and contain on their back in gold lettering the trademarked Roho name, patent information and instructions for inflating and maintaining the product. While Roho offers the wheelchair cushions for sale, it only leases its mattresses to hospitals either through its marketing division or through licensees. Roho and its mattress licensees provide a host of services to support the use of their mattress products including delivering the mattresses for use, inflating the mattresses to suit the patient, maintaining and adjusting inflation levels during the patients' use of the products, picking up the products from the hospital when no longer needed and cleaning them after use.

Charles Marquis, a Louisiana domiciliary, is the president, sole shareholder and sole officer of Chase Orthopaedic Care, Inc. ("Chase"), a Louisiana corporation, that sells and leases medical care equipment in Louisiana.

In December 1988, Marquis bought 87 Roho wheelchair cushions after allegedly telling Roho and its Louisiana licensee for

the sale of Roho wheelchair cushions, Duncan–Smoot Health Reps, that he wanted to be a dealer for these products. In early 1989, Medicarents, the Roho licensee responsible for leasing Roho mattresses to Louisiana hospitals and providing the required support services, told Roho that Chase was supplying air flotation mattresses to Tulane Medical Center that were identical to Roho mattresses. Marquis constructed his mattress by gluing together ten Roho wheelchair cushions after almost completely obliterating all the patent, trade and service marks and operating instructions from the cushions' underside.

After making unsuccessful demand upon Marquis to stop marketing his mattress, Roho filed this action for injunctive relief. On June 27, 1989, the Court signed an Ex Parte Motion for Temporary Restraining Order and Order Setting Hearing on Preliminary Injunction submitted by Roho. The order enjoined the defendant from modifying or altering plaintiff's products, from removing trade or service mark or patent information from the products and from selling plaintiff's products under another name or in a manner not specifically authorized by the plaintiff. It also required Roho to post a $1,500.00 bond (which was so posted June 29, 1989) and set the hearing on Roho's Motion for Preliminary Injunction for July 6, 1989 at 2:00 P.M.

Roho asserted claims that Marquis has engaged in "reverse palming off" or selling Roho's products as his own, a use of false designation of origin and false representation in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1947); that Marquis violated Roho trade and service marks as prohibited by 15 U.S.C. § 1114 and Louisiana trademark law and that Marquis engaged in unfair competition, dilution of business reputation, unfair trade practices and fraud prohibited under Louisiana law.

*Analysis*

Initially, the Court notes that contrary to contentions of defendants' counsel, the Court clearly has jurisdiction to entertain all the claims asserted by Roho in this suit.

In its complaint, Roho alleges federal question jurisdiction authorized by 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b) which confer power upon federal courts to adjudicate disputes relating to the Lanham Act, 15 U.S.C. §§ 1051–1127, and the trademark laws respectively. Roho alleges also that this Court is vested with diversity jurisdiction, 28 U.S.C. § 1332(a), since plaintiff and defendant are diverse and the amount in controversy exceeds the jurisdictional limit for diversity actions, effective July 1, 1989, of $50,000.00. Under federal question jurisdiction, this Court has the power to entertain all of Roho's federal statutory claims. It also allows this Court to hear its claims sounding in state law under the doctrine of pendant jurisdiction since they relate to the same set of facts as those the federal claims encompass. Alternatively, the satisfactory allegation of diversity jurisdiction invokes the *Erie* doctrine which compels that this Court apply Louisiana law to plaintiff's state law claims even if Roho's federal law claims are for some reason not cognizable here.

Turning to the substantive contentions, the Court granted the plaintiff's Motion for Preliminary Injunction upon the allegation that Marquis had likely violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1947). Because the Court found merit in this claim for present purposes, it left the remaining claims to be addressed at the trial on the merits.

Section 43(a) of the Lanham Act prohibits false designation of origin or any false description or representation of a good or service in interstate commerce, 15 U.S.C. § 1125(a).

Section 43(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same and shall cause such goods and services to enter into commerce, and any person who shall acknowledge of the falsity of such designa-

tion of origin or description or representation, cause or procure the same to be transported or used in commerce, or deliver the same to any carrier to be transported or used shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or the regions in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

This section's purpose is to protect consumers and competitors from a wide variety of misrepresentations regarding products and services in commerce. *CBS v. Springboard International Records*, 429 F.Supp. 563, 566 (S.D.N.Y.1976). Because the statute is clearly remedial, it should be broadly construed. *Id.*

■ To constitute an actionable tort under Section 43(a), the plaintiff must allege (1) that "goods or services" are involved (2) that interstate commerce is effected and (3) that there is a false designation of origin or a false description or representation. *Id.*

Plaintiff clearly meets the first two prongs of this test. Defendant admits that it has used plaintiff's wheelchair cushions in making its mattress and Roho's products are sold and leased nationwide. Further, the Court takes judicial notice that Tulane Medical Center, the hospital at which Marquis admits was using his mattress after marketing the product there, treats patients who reside throughout the country and that this hospital buys supplies from businesses located in states throughout the country, all of which satisfy the interstate commerce requirement of this statute.

The real contested issue pursuant to this claim is whether Marquis' use of the Roho's products causes or is likely to cause confusion among the consuming public as to the source of the Chase mattress's origin or whether Marquis' conduct involves a false representation as to his product's origin.

■ The Court believes that Roho has carried its burden of proving that likelihood of consumer confusion so that this third prong is met and that Marquis' activities violates Section 43(a) of the Lanham Act. The substance of Roho's allegations as to this statute is that Marquis engaged in "reverse palming off" or producing a product in such a way that the consuming public is led to believe they are obtaining a good or service that is the defendant's but actually is that of someone else. This type of activity, if proven that it is likely to cause confusion as to the product's origin, is cognizable under the Lanham Act. *U–Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159 (9th Cir.1982). Roho contends that by obliterating its "ROHO" trademarks and patent information from the bottom of the cushions and placing its own label on the cushions, Marquis is expropriating Roho's products in a way that is likely to cause consumers to be confused as to the product's origins.

■ Marquis argues that he is not engaging in prohibited activity because he is not simply reselling Roho products under his or his corporation's name. Marquis contends that his assembly of the Roho cushions creates a new, improved product. As evidence of this he produces documents that he alleges have been submitted for patent consideration, he points the Court to his mattress' ability to have its inflation varied from side to side, or longitudinally along the length of the mattress, and testimony from Tulane Medical Center physical therapists who attest to the desirability of his product. Marquis also cites the Court to a line of jurisprudence, led by two United States Supreme Court decisions, *Prestonettes v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) and *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), for the proposition that a holder of a trademark has no right to prohibit another from repackaging or refurbishing the former's products as long as the latter clearly identifies the products as those trademarked and that the refurbisher or repackager clearly indicates its role to consumers.

In *Champion*, for example, a spark plug manufacturer was prohibited from enjoining a spark plug reconditioner from using

the manufacturer's name on the reconditioned plugs or the packaging in which the plugs were sold. The Court held that as long as the packaging clearly told consumers that the plugs were reconditioned and that they were so reconditioned by the defendant there would be no infringement of the plaintiff's trademark. Consumers were put sufficiently on notice that the defendant, not the manufacturer, was responsible for the reconditioning and so consumers were unlikely to attribute any product inferiority due to the reconditioned nature of the plugs to the original manufacturer.

For a number of reasons, defendant's argument is not persuasive. Section 43(a) of the Lanham Act was not effective law until July 5, 1947, post dating both the *Champion* and *Prestonettes* decisions. Further, neither *Champion, Prestonettes* nor any of the lower court decisions defendant cites to the Court address Section 43(a) of the Lanham Act.

Even if they did, however, they are distinguishable and do not support Marquis' actions. These cases hold that because of the nature of the reworking of the trademarked product and because of disclosures placed on the packaging, consumers would not likely be confused as to the origin of the product or who was responsible for any lack of quality or problems that might arise. *See, Singer Mfg. Co. v. Briley,* 207 F.2d 519 (5th Cir.1953) (rebuilt Singer sewing machines can be sold as long as the machines are clearly labeled as rebuilt); *Scarves By Vera, Inc. v. American Handbags, Inc.,* 188 F.Supp. 255 (S.D.N.Y.1960) (Handbags made from towels bearing plaintiff's trade and copyright marks could be sold if containing labels indicating that towels originated with the plaintiff and that the bag was manufactured by defendant); *C.M. Paula Co. v. Logan,* 355 F.Supp. 189 (N.D.Tex.1973) (defendant could sell ceramic plaques bearing plaintiff's copyrighted artwork and text if the artwork and text are identified to consumers as that of the plaintiff and that defendant maker of the plaques was not connected to plaintiff).

Such is not the case here. This Court has affidavits and has heard testimony from Terry Martin, Cameron Morton and Janice Hill, on the other hand, that strongly indicate that consumers would confuse Marquis' mattresses with those manufactured by Roho. Martin, a purchasing agent for Tulane Medical Center who is in fact a consumer of the products in question, testified that he believed the two products to be similar, that they look similar, are used for similar purposes and are used by, and marketed to, the same end user. Cameron Morton, a Medicarents patient representative who spends his working life adjusting and caring for these mattresses and who should know a Roho product as well as anyone could, testified that he was unable to tell these products apart except from close and detailed inspection. Janice Hill, a Tulane Medical Center nurse who evaluated Marquis' product, said she rated it as reliable solely on the fact that it was made from Roho cushions, which she considered to be a high quality product. She also testified that the Marquis mattress looked virtually identical to a Roho mattress.

The Court finds that this testimony overwhelmingly supports Roho's reverse palming off theory. The only physical differences between the Roho and Marquis products is that the latter does not contain the Roho patent, trade and service mark and use information and has more valves than the Roho mattress. The extra valves, however, did not prevent confusion even among Mrs. Cameron and Martin, who are virtually as knowledgeable about such devices as anyone could be. Certainly the end user unfamiliar with flotation devices could easily mistake Marquis' mattress with a Roho product. *See, Matsushita Electric Corp. v. Solar Sound Systems, Inc.,* 381 F.Supp. 64 (S.D.N.Y.1974) (defendant enjoined from modifying or selling radios after finding of violation of Section 43(a) when it bought plaintiff's radio, removed identifying information, put its own nameplate on the product and reconfigured knobs and dials on radio to reflect circuitry changes defendant planning to build into its product).

Marquis testified that he explicitly informs all potential lessees of his mattresses that they are constructed from Roho cushions and that he is willing to put labeling describing the Roho origins of the cushions and his part in manufacturing the mattress on his products. However, Terry Martin's testimony did not corroborate this assertion and, more importantly, this labeling would not cure the confusion problem in this instance.

The hospital that leases Roho mattresses receives a bundle of services, including pick-up, delivery, set-up, adjustment, cleaning and other maintenance procedures with every mattress that is used. James Fleming, a Roho corporate officer, provided unrebutted testimony that Roho believes these services are indispensable to their product's purpose of preventing and treating skin breakdown. Although integral to their product's success, these services are difficult for the end users to take notice of. To the extent that these essentially hidden services have enhanced Roho's reputation and to the extent that Marquis does not provide these services but does provide a product that is easily confused with that of Roho, the confusion could lead to a diminution of the reputation and good will it has earned. This problem would be especially acute in the context of patients suffering medical problems from use of a Marquis mattress.

The Court is also sensitive to the fact that the Roho and Marquis mattresses are used as medical devices to help prevent and treat potentially life threatening skin conditions. Marquis admitted in open court that he has performed no tests to corroborate his claims that his configuration of Roho wheelchair conditions is in fact an improvement or, for that matter, whether it is safe and effective for its intended use. Beyond the fact that the Roho and Marquis mattresses are so physically indistinguishable that any difficulties arising from the design change could easily be attributed to Roho, the longitudinal concept may have unknown consequences for its users. The Court is reluctant to allow a product in this position to be put on the market.

In short, there are no factors to mitigate the consumer confusion caused by Marquis' use of Roho's wheelchair cushions. The Court finds a substantial Section that Roho will succeed, at the very least, in proving its Section 43(a) Lanham Act claim against the defendants.

*Injunctive Relief*

The Lanham Act clearly provides a remedy of injunctive relief for violations of Section 43(a). *U–Haul International v. Jartran*, 681 F.2d at 1162. Plaintiff is entitled to this relief if he satisfies its burden of proof on the following prerequisites:

(1) a substantial likelihood that the movant will prevail on the merits;

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest.

All these factors are met here. The Court's analysis of Section 43(a) indicates that the plaintiff is likely to prevail on this claim. Unless an injunction issues, Roho is likely to lose customers and to suffer harm to its reputation from defendant's activities. Because the use of these products effects primarily people in need of medical services, injunctive relief is therefore in the public's as well as the plaintiff's interest. Defendant is currently using only one of his mattresses. Although apparently capable of producing more, he will still be able to do so after trial on the merits should the ultimate determination be in his favor.