FEDERAL–MOGUL–BOWER BEARINGS, INC., Plaintiff-Appellant,

v.

Martin AZOFF, Harry Kekst, Hilmar Rosenthal, jointly and severally and as copartners doing business as and under the name and style of Cuyahoga Auto Parts & Salvage, Cuyahoga Motor Remanufacturers, Cuyahoga Auto Parts, Cuyahoga Auto Wrecking, Tepco Truck Engine Parts, and Tepco Engine Remanufacturing Division, Defendants-Appellees.

No. 14920.

United States Court of Appeals
Sixth Circuit.

Feb. 15, 1963.

406

---

Arthur W. Dickey, Detroit, Mich. (Harness, Dickey & Pierce, Detroit, Mich., on the brief), for appellant.

John C. Oberlin, Cleveland, Ohio (Oberlin, Maky & Donnelly, Cleveland, Ohio, of counsel, on brief), for appellees.

Before McALLISTER, WEICK and O'SULLIVAN, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant seeks review of an order dismissing its complaint on the ground that it did not state a cause of action. It is the contention of appellant that it alleged in its complaint sufficient facts to maintain its claim against appellees, for false description and representation, under the Lanham Act, 15 U.S.C.A. § 1125(a).

The above section of the Lanham Act provides:

"False designations of origin and false descriptions forbidden. Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be-

transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

The following allegations appear in the complaint:

Appellant is a corporation organized under the laws of Michigan, having its principal office in Detroit. Appellees are copartners, having their principal place of business in Cleveland, Ohio. Appellant company has, for many years, been engaged in manufacturing, transporting, distributing, marketing, and selling, both in interstate commerce and foreign commerce, engine bearings and connecting rods for internal combustion engines, which have been sold and distributed in packages and containers, which are distinguished by features, including the size of the container, the symbol, printing, background, general arrangements, form, and the coloration thereof. These packages and containers of appellant, according to the complaint, have long been known, and are presently recognized by the trade and by the public in interstate and foreign commerce as identifying and distinguishing the engine bearings and connecting rods contained in these packages and containers, as being the product of appellant, and, further, as identifying the appellant as the source of these bearings and connecting rods. Thereby appellant has acquired and enjoys a large and valuable reputation of good will with the trade and with the public, both domestic and foreign, for its engine bearings and connecting rods which are contained and marketed in these distinctive packages and containers.

The complaint further alleged:

Appellees, within several months prior to the initiation of this action, and during its pendency, transported and continued to transport, distribute, market, sell, and cause to be entered into and used in commerce, both interstate and foreign, and particularly in foreign commerce, engine bearings and connecting rods which compete with the engine bearings and connecting rods of appellant, and these engine bearings and connecting rods of appellees were being so transported, sold, or otherwise placed in interstate and foreign commerce in packages and containers, which imitate and so nearly resemble the packages and containers of appellant in the collocation of distinctive features, as to falsely represent the engine bearings and connecting rods packaged in appellees' containers as being the goods of appellant, and also as being goods originating from appellant.

The complaint further declared that the false representations of appellees are such as to be likely to cause confusion in trade and commerce, and particularly in foreign commerce, of appellees' bearings and connecting rods with those of appellant; that appellees had knowledge of appellant's trade and commerce, particularly foreign commerce in its engine bearings and connecting rods, and deliberately adopted and used the imitative packages and containers with an intent to deceive the trade and public, and particularly those who do not readily read or understand the English language, into mistaking and confusing the engine bearings and connecting rods of appellees for, and with, those of appellant; that the acts of appellees were done with, and for the purpose of, unlawfully appropriating and trading upon the good will and reputation of appellant; and that appellees, in so using the imitative packages and containers not only falsely represent that their bearings and connecting rods are the product of appellant, but also falsely represent that these products originate with appellant.

The acts of appellees, it was claimed by appellant, had caused, and were causing great and irreparable damage to appellant's business, reputation, and good will in the manufacture, distribution and sale of its products in interstate and foreign commerce.

Under the Lanham Act, above quoted, any person who shall use, in connection

with any containers for goods, a false designation of origin, or any false description or *representation,* including symbols tending falsely to represent the same, and shall with knowledge of the falsity of such designation of origin, or description, procure the same to be transported or used in commerce, is liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said origin is located, or by any person who believes he is, or is likely to be damaged by the use of any such false description or representation.

The trial court was of the view that any attempt to characterize the complaint as charging a "false description or representation" was without merit. Moreover, the trial court held that the word, "origin," in the Act, referred to geographical origin rather than to "origin by manufacturer." Observing that a question of jurisdiction should be construed most strictly against jurisdiction, the trial court remarked that there were adequate remedies in the state courts and that if the Lanham Act were applied to the facts in this case, not only might the plaintiff bring this action, but any person doing business near one of the plaintiff's plants might also bring suit; and such a construction would open nearly all the field of unfair competition to federal jurisdiction.

■ The allegations that appellees sold, transported, or placed in interstate commerce, bearings and connecting rods in packages or containers which imitate and so nearly resemble the packages and containers of appellant in collocation of distinctive features as to falsely represent them to be the goods of appellant, and that appellees deliberately adopted and used the imitative packages and containers with an intent to deceive the trade and public into confusing the bearings and rods of appellees with those of appellant, and that they falsely represented that their bearings and connecting rods were the product of appellant are allegations, which in our opinion charge a false description or misrepresentation, as those

terms are used in the statute. L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 650, 651 (C.A.3); L'Aiglon Apparel v. Lana Lobell, Inc., 115 U.S.P.Q. 235 (D.C. Pa.); Catalina, Inc. v. Gem Swimwear, Inc., 162 F.Supp. 911 (D.C.N.Y.).

■ We are further of the opinion that the word, "origin," in the Act does not merely refer to geographical origin, but also to origin of source or manufacture. In Eastman Kodak Co. v. Royal-Pioneer Paper Box Mfg. Co., 197 F.Supp. 132, 135 (D.C.Pa.), the court, in discussing the applicability of the Lanham Act to the case before it, said:

"Defendant has caused its deceptively similar photographic film return boxes to enter into, be transported and used in commerce throughout the United States and in the Commonwealth of Pennsylvania and has thereby enabled the false designation by others that the service in connection with which such boxes are employed originated with plaintiff. Such false designation constitutes a violation of Section 43 (a) of the Lanham Act, 15 U.S.C.A., Section 1125(a)."

See also Scarves By Vera, Inc. v. United Merchants and Manufacturers, Inc., 173 F.Supp. 625 (D.C.N.Y.).

We come, then, to the question of what area of unfair competition is subject to federal jurisdiction under the provisions of the Lanham Act.

Section 45 of the Lanham Act, (15 U.S. C.A. § 1127), in its last paragraph, provides:

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commence (sic) from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counter-

feits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations."

The terms "mark," and "trade-mark," are defined by the foregoing section as follows:

"The term 'mark' includes any trade-mark, service mark, collective mark, or certification mark entitled to registration under this chapter whether registered or not."

"The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

■ As observed by appellant, the Lanham Act does not provide a right of action for trade-mark infringement generally; it leaves to the state courts, administering the state laws, and to the diversity cases, those cases for common law trade-mark infringement that do *not* arise out of deceptive and misleading use of such marks in interstate and foreign commerce. But it does provide a right of action to persons engaged in interstate and foreign commerce, against deceptive and misleading use of common law trademarks, and against deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a manufacturer or merchant to identify his goods and distinguish them from those manufactured by others, where such misleading use is carried on, in the channels of interstate and foreign commerce, which is subject to regulation by Congress.

In Samson Crane Co. v. Union National Sales, Inc. et al., 87 F.Supp. 218, 222 (D.C.Mass.), affirmed by per curiam opinion in 180 F.2d 896 (C.A.1), the court, in considering the intent of the Lanham Act, and in denying the complaint therein filed for failure to allege misrepresentation *in interstate commerce,* stated:

"The intent of Congress in passing the Act is set forth in the final paragraph of Section 1127. Only one phrase of that paragraph fails to use the word 'mark'. And that phrase ('to protect persons engaged in such commerce against unfair competition') must in such a context be construed to refer not to any competitive practice which in the broad meaning of the words might be called unfair, but to that 'unfair competition' which has been closely associated with the misuse of trade-marks, i. e., the passing off of one's goods as those of a competitor. It is clear, both from this statement of the intent and from a reading of the Act as a whole, that the primary purpose of the Act was to eliminate deceitful practices in interstate commerce involving the misuse of trademarks, but along with this it sought to eliminate other forms of misrepresentations which are of the same general character even though they do not involve any use of what can technically be called a trade-mark. The language of Section 43(a) is broad enough to include practices of this latter class. But the section should be construed to include only such false descriptions or representations as are of substantially the same economic nature as those which involve infringement or other improper use of trade-marks. It should not be interpreted so as to bring within its scope any kind of undesirable business practice which involves deception, when such practices are outside the field of the trade-mark laws, * * *."

■ The legislative history of the Lanham Act indicates that Congress intended to fashion a new federal remedy against a particular kind of unfair competition that the common law had effectively protected. American Rolex Watch

Corporation v. Jack Laufer and Jan Voort, Inc., 176 F.Supp. 858 (D.C.N.Y.).

In accordance with the foregoing, it is our view that the complaint stated a cause of action under the Lanham Act. The order dismissing the complaint is, therefore, set aside, and the case is remanded to the District Court for further proceedings.