**Theodor Seuss GEISEL, Plaintiff,**

v.

**POYNTER PRODUCTS INC., Alabe Crafts, Inc., Linder, Nathan & Heide, Inc.. and Liberty Library Corporation, Defendants.**

**No. 68 Civ. 997.**

United States District Court
S. D. New York.
April 9, 1968.

---

White & Case, New York City, for plaintiff; William D. Conwell, New York City, of counsel.

Cowan, Liebowitz & Latman, New York City, for defendants; Alan Latman, Arthur J. Greenbaum, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

The within motion for a preliminary injunction is granted. This opinion sets forth the findings of fact and conclusions of law which are the grounds of the Court's action (Fed.R.Civ.P. 52(a)) and the reasons for the granting of the injunction pendente lite (Fed.R.Civ.P. 65(a) (2)).

The complaint pleads five causes of action. The plaintiff's claims are based on five different "theories": (1) violation of the Lanham Act, 15 U.S.C.A. § 1125; (2) violation of New York General Business Law, McKinney's Consol.Laws, c. 20 § 368–d; (3) violation of New York Civil Rights Law, McKinney's Consol. Laws, c. 6 § 51; (4) commercial slander; and (5) *prima facie* tort. Plaintiff seeks $10,000,000. in punitive and compensatory damages and a permanent injunction.

## FINDINGS OF FACT

1. Plaintiff, Theodor Seuss Geisel (hereafter Dr. Seuss), is a resident of La Jolla, California. He is a well known artist and author.

2. Defendant Poynter Products Inc. is an Ohio corporation, having its principal place of business as 7 Arcadia Place, Cincinnati, Ohio. It is engaged in the business of manufacturing and selling toys and novelties.

3. Defendant Alabe Crafts, Inc. (hereafter Alabe) is an Ohio corporation, having its principal place of business at 1632 Gest Street in Cincinnati, Ohio. It distributes the products of Poynter Products Inc.

4. Liberty Library Corporation (hereafter Liberty) is successor to the assets of Liberty Publishing Corporation, publisher of the presently defunct Liberty Magazine. Liberty is a New York corporation with its principal place of business at 353 West 57th Street, New York, New York.

5. Defendant Linder, Nathan & Heide, Inc. (hereafter Linder) is a New York corporation, having its principal place of business at 200 Fifth Avenue, New York, New York. It is engaged in selling toys and novelties to retailers. It acts as manufacturers' representative in New York City for defendants Poynter, Alabe and others.

6. Plaintiff is a well known and highly respected artist-author who has written and illustrated a large number of books and articles including (in chronological order) "And to Think that I Saw it on Mulberry Street" (1937), "The Seven Lady Godivas" (1937), "The 500 Hats of Bartholomew Cubbins" (1938), "The King's Stilts" (1939), "Horton Hatches the Egg" (1940), "McElligot's Pool" (1947), "Thidwick the Big-Hearted Moose" (1948), "Bartholomew and the Oobleck" (1949), "If I Ran the Zoo" (1950), "Scrambled Eggs Super" (1953), "Horton Hears a Who" (1954), "On Beyond Zebra" (1955), "If I Ran the Circus" (1956), "How the Grinch Stole Christmas" (1957), "The Cat in the Hat" (1957), "The Cat in the Hat Comes Back" (1958), "Yertle the Turtle" (1958), "Happy Birthday" (1959), "One Fish Two Fish Red Fish Blue Fish" (1960), "Green Eggs and Ham" (1960), "The Sneetches and Other Stories" (1961), "Dr. Seuss's Sleep Bock" (1962), "Hop on Pop" (1963), "Dr. Seuss's ABC Book" (1963), "I Had Trouble in Getting to Solla Sollew" (1965) and "Fox in Socks" (1965).

7. Plaintiff's books feature imaginative and whimsical creatures created by plaintiff and drawn in his unique readily recognizable style. They are carefully drawn, colored and printed to convey a delightfully humorous and lovable aura. These creatures are the foundation of the success of plaintiff's works and strike a responsive chord in the hearts and imaginations of children everywhere.

8. Plaintiff's books are published by Random House, Inc. and millions of copies have been sold throughout the world. His books have become children's classics.

9. Plaintiff created and originated the movie cartoon character, "Gerald McBoing-Boing" for which he received an Academy Award in 1951. Plaintiff's books, cartoons and drawings have been the subject of many articles including: "The Wonderful World of Dr. Seuss," Saturday Evening Post, July 6, 1957; "The Significance of Dr. Seuss," New York Times Sunday Book Review, May 11, 1958; "Dr. Seuss Talks to Parents," Parent's Magazine, November 1960; "The Miracle of Dr. Seuss," Good Housekeeping, December 1960; "Profile on Dr. Seuss," The New Yorker, December 17, 1960; "Muse on the Loose is Dr. Seuss," Los Angeles Times, January 5, 1964; "Kingdom of Seuss," Christian Science Monitor, January 29, 1964; "The Nonsensical World of Dr. Seuss," McCalls, November 1964; "Zoo's Who: Dr. Seuss, That's Who," Coronet, December 1964.

10. Some of plaintiff's books have been recorded by Decca and Columbia Records. Plaintiff has appeared on numerous television and radio broadcasts. His book entitled "How the Grinch Stole Christmas" was produced on nationwide television shows on December 18, 1966 and December 17, 1967 over the facilities of the Columbia Broadcasting System Television network.

11. A large number of Dr. Seuss' original drawings and manuscripts are in a special exhibition in the Special Collections Division of the Library at the University of California, Los Angeles. Plaintiff's works, advertised on posters and hand-out brochures as "How the Grinch Stole Christmas" were exhibited at an admission-free four day children's Jamboree holiday program at the La Jolla Museum of Art.

12. Plaintiff's cartoons have also been used as educational material in many fields such as driver education and children's reading. His books are contained in a large number of school libraries throughout the country. Plaintiff is listed in "Who's Who in America" and he was awarded an honorary doctorate of Humane Letters from Dartmouth College in 1956.

13. Plaintiff's books have been the basis for the nationwide "Grolier Society Beginner Book Club" a division of the Grolier Society, which has more than one hundred thousand members.

14. Plaintiff is the President of the Beginner Book Division of Random House, Inc.

15. The trade name "Dr. Seuss" is of great commercial value and is a substantial aid in the sale of any product for children. The name "Dr. Seuss" in a distinctive form of type is placed prominently on the cover of plaintiff's many well known books and in advertising and promotional material relating to his many books, records, movies and television programs. "Dr. Seuss" has been plaintiff's pseudonym and trade name since about 1927 or 1928.

16. In 1932 before Dr. Seuss began to write his highly successful children's books, he prepared for publication in the now defunct Liberty Magazine a series of short illustrated one paragraph essays or notes for adult consumption.[1]

---

1. Plaintiff entered into a transaction in 1932 with Liberty Magazine for the sale of certain cartoon essays, including *inter alia* the following: the sale of four cartoons with text on or about April 25, 1932 for $300., which items were published in the magazine on or about June 11, 1932; the sale of certain cartoons and text on or about September 15, 1932 for $300., which items were published in the magazine on or about October 1, 1932; and the sale of certain cartoons and text on or about August 5, 1932 for $300., which items were published in the magazine on or about October 8, 1932.

There is no present written document evidencing any signed agreement covering the above transactions between the plaintiff and Liberty Magazine. The plaintiff has no recollection of any such signed agreement. The only exhibits submitted by defendants as documentation of said agreement are certain alleged purchase record cards found in the files of

A number of the illustrations for these humorous adult pieces contained whimsical imaginative creatures which bore humorous names keyed to the text, e. g., "The Put-Your-Nose-Here Terrier," "The Tapered-Tailed Dingo" etc.

17. These illustrated essays or notes were published in issue of Liberty Magazine from June through December 1932.

18. Liberty Publishing Corporation which published Liberty Magazine was dissolved and many of its assets were sold or transferred to defendant Liberty Library.

19. Sometime in 1966 or 1967, Liberty Library entered into a contract with defendant Poynter authorizing Poynter to manufacture and sell dolls or toys based on the illustrations for the 1932 humorous essays published in Liberty Magazine and to use the name "Dr. Seuss" in connection with such products.

20. Poynter thereupon entered into an agreement with a toy manufacturer in Japan for the manufacture of a set of small toys or dolls derived from creatures which appeared in the 1932 illustrations. Liberty was paid for entering into such agreement and participates in the profits from the sale of any such dolls or toys.

21. Defendants have caused a number of models of these dolls to be manufactured and are advertising, selling and offering them for sale in New York and elsewhere. These dolls deviate substantially and materially from the 1932 illustrations.

22. Plaintiff did not see these dolls until they were offered for sale. Plaintiff did not create, design, manufacture, produce, authorize or approve any of these dolls. Plaintiff did not authorize or permit the use of his trade name "Dr. Seuss" in connection with any of these dolls for the purpose or effect of representing that any of these dolls have been created, designed, manufactured, produced, authorized or approved by him.

23. Defendants Poynter, Alabe and Linder with the approval and agreement of Liberty are falsely representing these dolls as the product of Dr. Seuss, which they are not, or as having been approved by Dr. Seuss, when they were not.

24. The dolls are sold in an "Eye Poppin' Counter Display" characterized as "Dr. Seuss Assortment Display No. P-340". They are represented in the display carton as being "From the Wonderful World of Dr. Seuss." The display carton itself groups all the dolls and calls them "Dr. Seuss' Merry Menagerie."

25. The name "Dr. Seuss" as printed in large and prominent type on defendants' sales materials reproduces exactly the distinctive lettering and form used for that trade name of plaintiff when it is affixed to genuine Dr. Seuss products.

26. Each doll is prominently advertised as being sold "complete with a Dr. Seuss Tag." Around the neck of each doll is a tag which states: "This is my ————— from Dr. Seuss Merry Me-you name it nagerie." The tag also states "From the Wonderful World of Dr. Seuss."

27. The circular tag tied around each doll's neck contains the name "Dr. Seuss" on both sides in such prominent type that the name is all that can be read from a distance of a few feet. The round tag is generally as large as the head of the

Liberty Magazine. On the present record, it is doubtful whether these cards are competent under the Federal Business Records Act, 28 U.S.C.A. § 1732.

There is a genuine issue of material fact and law as to the scope of the rights transferred by plaintiff to Liberty Magazine by the aforesaid transactions. Plaintiff claims that he sold only the right to use each of such cartoons and accompanying text for one insertion in the United States and Canada in that one respective issue of Liberty Magazine. Some corroboration of that viewpoint is contained in the affidavit of Leland Hayward, submitted by plaintiff.

Defendants claim a much broader bundle of rights, including the right to manufacture, sell, advertise and distribute the dolls involved herein and in the manner in which defendants have acted in connection with such manufacture, sale, advertising and distribution.

doll. Upon looking at the doll the most prominent thing seen is the name "Dr. Seuss" printed in the distinctive manner used by plaintiff as his trade name.[2]

28. These materials and other representations made in connection with the display, distribution and sale of these dolls are deliberately intended to, and do give the impression and constitute express and implied representations that plaintiff created, designed, manufactured, produced, authorized or approved the design of these dolls and the dolls themselves. This impression and these representations are false. They are misleading to the children and adults to whom these products are offered for sale.

29. Defendants have affixed and used in connection with their aforesaid products a false designation of the origin of those products and have falsely described and represented such products to the damage of plaintiff.

30. Defendants have caused the aforesaid products to enter interstate commerce.

31. The aforesaid actions of defendants constitute a violation of 15 U.S.C.A. § 1125.

32. Defendants have misrepresented their products as being the design or creation of plaintiff with the intent and probable effect of causing customer confusion and of passing off these products as those of plaintiff.

33. The aforesaid actions of defendants have caused and, if not enjoined, will continue to cause plaintiff irreparable damage.

*Discussion*

■ Whatever right the defendants (whether considered individually or collectively) possess by virtue of the plaintiff's transfer of certain of his rights in the 1932 Liberty cartoons, these rights do not empower the defendants to engage in the acts described in Findings of Fact numbered "23" to "33".

The Court has determined that the plaintiff has demonstrated a reasonable probability of success at the plenary trial on his claim that defendants have violated Section 43(a) of the Lanham Act. It is therefore unnecessary, at this juncture, to examine the validity of plaintiff's other theories. These can be, if necessary, more judiciously explored at the plenary trial.

It is not necessary (were it possible) for the Court at this time to answer the generalized question whether under materially different and presently undefined surrounding facts and contextual circumstances the defendants may have certain rights to make three-dimensional figures having a lineage traceable to the two-dimensional cartoons or have certain rights to mention plaintiff's name.

*The Lanham Act*

In Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a),[3] Congress has fashioned a new federal remedy against a particular kind of unfair competition— the use of a false designation of origin or any false description or representation.

---

**2.** The opposing affidavit of Donald B. Poynter, president of defendant-Poynter Products Inc., sworn to March 12, 1968, refers to "my Dr. Seuss toys" (p. 4) and "my Dr. Seuss line" (p. 5). There is evidence that defendants, in their promotional and sales activities, refer to these dolls as "The Dr. Seuss Series", "Dr. Seuss Mechanical & Miniature Stuffed Toys", "Dr. Seuss Animals" and "Dr. Seuss Merry Menagerie". (Affidavit of Seymour Adler, sworn to March 8, 1968, and Exhibits B, C, D and F attached thereto; and Affidavit of Herbert Schneider, sworn to March 22, 1968.)

**3.** 15 U.S.C.A. § 1125(a) provides:
"§ 1125. False designations of origin and false descriptions forbidden
(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity

267

Bogene, Inc. v. Whit-Mor Mfg. Co., 253 F.Supp. 126 (S.D.N.Y.1966); L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954); American Rolex Watch Corp. v. Jack Laufer & Jan Voort, Inc., 176 F.Supp. 858, 861 (E.D. N.Y.1959).

■ Section 43(a) is a remedial provision and should be broadly construed. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 546 (2d Cir. 1956) (Clark, C. J., concurring).

■ Section 43(a) provides relief against that kind of unfair competition which is analogous to the misappropriation or misuse of trade names or trademarks. The unfair competition must involve a misuse of a "distinguishing characteristic" of the manufacturer's product or of the manufacturer himself. Federal-Mogul-Bower Bearings Inc. v. Azoff, 313 F.2d 405, 409 (6th Cir. 1963); General Pool Corp. v. Hallmark Pool Corp., 259 F.Supp. 383, 386 (N.D.Ill. 1966); Frostie Co. v. Dr. Pepper, 341 F.2d 363 (5th Cir. 1965); Hesmer Foods, Inc. v. Campbell Soup Co., 346 F.2d 356 (7th Cir. 1965).

A right of action is provided against the:

"deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a manufacturer or merchant to identify his goods and distinguish them from those manufactured by others * * *."

Federal-Mogul-Bower Bearings Inc. v. Azoff, supra 313 F.2d at 409.

■ In determining whether defendants' actions have violated Section 43(a), it is necessary to point out that the phrase "false designation of origin" is not limited to geographic origin. Rather, this statutory language "covers any

representation with respect to the originator of a product i. e. a particular source of manufacture by a certain business." 1 Callman, Unfair Competition and Trade Marks § 18.2(b) (3d ed. 1967); Federal-Mogul-Bower Bearings Inc. v. Azoff, supra; PIC Design Corp. v. Sterling Precision Corp., 231 F.Supp. 106 (S.D.N.Y.1964); General Pool Corp. v. Hallmark Pool Corp., supra. Cf. Eastman Kodak Co. v. Royal-Pioneer Paper Box Mfg. Co., 197 F.Supp. 132 (E.D.Pa. 1961); Scarves By Vera, Inc. v. United Merchants And Manufacturers, Inc., 173 F.Supp. 625 (S.D.N.Y.1959). But see W. Derenberg, Federal Unfair Competition Law At The End Of The First Decade Of The Lanham Act: Prologue Or Epilogue?, 32 N.Y.U.L.Rev. 1029 (1957).

■ Similarly a "false representation", whether express or implied, that a product was authorized or approved by a particular person is actionable under Section 43(a), Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir. 1958). Cf. Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2d Cir. 1962).

■ Liability under the statute is not restricted solely to descriptions and representations that are literally false. Relief may be granted if the actions of the defendants create a false impression. Cf. Eastman Kodak Co. v. Royal-Pioneer Paper Box & Mfg. Co., supra; Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., 23 F.R.D. 115 (S.D.N.Y.1958).

■ The plaintiff is not required to prove actual palming off, Glenn v. Advertising Publications Inc., 251 F.Supp. 889, 903 (S.D.N.Y.1966). A showing of the likelihood of customer confusion as to the source of the goods is sufficient.

of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality false-

ly indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

General Pool Corp. v. Hallmark Pool Corp., supra 259 F.Supp. at 386.

■ For injunctive relief to be granted, there is no requirement that plaintiff show that customers were *actually* deceived by the alleged misrepresentation or that there was an *actual* diversion of business. Plaintiff need only demonstrate that the false representations "have a tendency to deceive." Parkway Baking Co. v. Freihofer Baking Co., supra 255 F.2d at 649; Hesmer Foods Inc. v. Campbell Soup Co., supra 346 F.2d at 359.

■ In the instant case, defendants' promotional activities are within the prohibition of Section 43(a). The tags, boxes, advertising literature and oral and written sales representations convey the clear impression that these toys are either designed, manufactured or authorized by Dr. Seuss. These activities constitute false designations of origin and false representations proscribed by Section 43(a) and are likely to deceive the buying public. See, e. g., Parkway Baking Co. v. Freihofer Baking Co., supra 255 F.2d at 648–9.

■ The defendants do not possess the right to represent that their goods were sponsored or authorized by the plaintiff; nor do they have the right to represent as copies, goods which are poorly made and deviate materially from the originals. Societe Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexander's Department Stores, Inc., supra 299 F.2d at 35.

## CONCLUSIONS OF LAW

1. There is diversity of citizenship between the parties hereto. The matter in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

2. The First Cause of Action herein alleges unfair competition in trade by means of false designation of the origin of goods and false descriptions and representations in violation of 15 U.S.C.A. § 1125.

3. Jurisdiction is conferred on this Court by the provisions of 15 U.S.C.A. § 1121 and 28 U.S.C.A. §§ 1332 and 1338.

4. There is a reasonable probability of plaintiff's success upon the trial of the First Cause of Action herein.

5. The plaintiff has suffered and will continue to suffer irreparable injury and damage caused by defendants unless the defendants are restrained and enjoined pending the hearing and determination of this case at a plenary trial.

6. The defendants, their officers, agents, servants, employees and all persons acting under their control and each of them are hereby enjoined and restrained pendente lite from committing any of the following acts in connection with the manufacturing, displaying, advertising, distributing, selling or offering for sale of any doll, toy or other similar product:

A. Representing that defendants' doll, toy or other similar product has been created, designed, produced, approved or authorized by plaintiff;

B. Describing defendants' doll, toy or other similar product as having been created, designed, produced, approved or authorized by plaintiff; or

C. Representing, describing or designating plaintiff as the originator, creator, designer, or producer of defendants' doll, toy or other similar products.

7. This case is set down for trial on April 22, 1968, 10 A.M. Fed.R.C.P. 65(a) (2).

8. The Court orders the continuance of the $25,000. bond (heretofore posted by plaintiff in connection with the temporary restraining order) pending the hearing and determination of this case.

9. If any of the parties desire additional or supplemental findings of fact and conclusions of law, such additional or supplemental findings and conclusions shall be submitted to the Court and opposing counsel within five days from the date of the filing of this opinion.

So ordered.