759 F.2d 1261
 225 U.S.P.Q. 1169
 FRISCH'S RESTAURANT, INC., Plaintiff-Appellant,
v.
SHONEY'S INC., Defendant-Appellee.
 No. 84-3240.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 6, 1984.
Decided April 25, 1985.
 
 Carl Genberg (argued), Genberg and Aucoin, Columbus, Ohio, for plaintiff-appellant.
 Virginia Conlan Whitman, Thomas L. Conlan, Cincinnati, Ohio, Gary M. Brown (argued), Ward DeWitt, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for defendant-appellee.
 Before KENNEDY, KRUPANSKY and MILBURN, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 Plaintiff-appellant Frisch's Restaurants, Inc. (Frisch's) initiated this proceeding alleging a cause of action under the Lanham (Trademark) Act, 15 U.S.C. Sec. 1125(a), seeking monetary damages, and injunctive relief against defendant-appellee Shoney's Inc. (Shoney's) enjoining Shoney's from constructing or continuing to operate any restaurant under the name "Shoney's" in states in which Frisch's has the exclusive right to use the "Big Boy" trademark. The district court issued a thirty-two page opinion denying the injunction and there followed this timely appeal. Frisch's Restaurants, Inc. v. Shoney's Inc., No. 1-82-834 (S.D.Ohio, Mar. 7, 1984) (Holschuh, J.).
 
 
 1
 For twenty-five years, Shoney's had been licensed to use the "Big Boy" trademarks to promote its restaurants in West Virginia, Virginia, North Carolina, South Carolina, Tennessee, Georgia, Alabama, Mississippi, Arkansas, Louisiana, and Missouri. In those states, Shoney's operated or sublicensed 381 "Shoney's Big Boy Restaurants". Frisch's has the exclusive "Big Boy" rights in Ohio, Kentucky, Indiana, and Florida.
 
 
 2
 In 1982, and thereafter, Shoney's launched food service operations in Kentucky and Florida under the tradename of "Shoney's Towne and Country Restaurant". Frisch's charged that the operation of "Shoney's Towne and Country" restaurants in the territory reserved to it for the use of the "Big Boy" mark violated the Lanham Act because of the public's association of the name "Shoney's" with "Big Boy".
 
 
 3
 The case is before this court upon timely appeal from the district court's order denying Frisch's motion for a preliminary injunction against Shoney's enjoining the use of the "Shoney's" name outside the Shoney's "Big Boy" license area.
 
 
 4
 This circuit has enunciated four elements which must be considered and "carefully balanced" in deciding to issue or withhold a preliminary injunction. Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 264 (6th Cir.1977);
 
 
 5
 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
 
 
 6
 2. Whether the movant has shown irreparable injury.
 
 
 7
 3. Whether the preliminary injunction could harm third parties.
 
 
 8
 4. Whether the public interest would be served by issuing the preliminary injunction.
 
 
 9
 563 F.2d at 261 (citing cases). See also In re DeLorean Motors Co., 755 F.2d 1223 (6th Cir.1985); USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982); Mobil Corp. v. Marathon Oil Co., 669 F.2d 366, 368 (6th Cir.1981). The standard of appellate review of a district court order granting or denying a preliminary injunction is whether it abused its discretion. Tate v. Frey, 735 F.2d 986, 990 (6th Cir.1984). See also, e.g., In re DeLorean Motors Co., supra; Friendship Materials Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir.1982); Adams v. Federal Express Corp., 547 F.2d 319 (6th Cir.1976). Rigid adherence to the "abuse of discretion" standard is required to avoid untoward disruption of the progression of lawsuits as the lower court decision "was in no sense a final disposition". Tate v. Frey, 735 F.2d at 990 (citing Securities and Exchange Comm'n v. Senex Corp., 534 F.2d 1240 (6th Cir.1976); Brandeis Machinery and Supply Corp. v. Barber-Green Co., 503 F.2d 503 (6th Cir.1974)). See, e.g., In re DeLorean Motors Co., supra.
 
 
 10
 Of course, the Mason County criteria "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief". Tate v. Frey, 735 F.2d at 990 (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d at 102). See also Roth v. Bank of the Commonwealth, 583 F.2d 527, 537 (6th Cir.1978), cert. dismissed, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." In re DeLorean Motor Co., 755 F.2d at 1229. Cf. Roth v. Bank of the Commonwealth, 583 F.2d at 537-38 (quoting Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. H.E.W., 418 F.Supp. 585, 586 (E.D.Mich.1976)). In the case at bar, the district court concluded that "Frisch's has failed to demonstrate a likelihood of success on the merits", and denied injunctive relief without consideration of whether the remaining three factors might nevertheless have counseled in favor of the injunction. On appeal the parties have again addressed Frisch's ability or lack thereof to support its probability of success on the Lanham Act claim.
 
 
 11
 Section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), provides:
 
 
 12
 (a) Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 
 
 13
 The Congress enacted the Lanham Act to make "actionable the deceptive and misleading use of marks in ... commerce ... [and] to protect persons engaged in such commerce against unfair competition". 15 U.S.C. Sec. 1127. The Sixth Circuit has previously concluded that false representations about the origin of goods or services are actionable under Sec. 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a). Federal-Mogul Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 408 (6th Cir.1963). In Federal-Mogul, this court determined that the Lanham Act provided "a right of action to persons engaged in interstate and foreign commerce, against deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a ... merchant to identify his goods and distinguish them from those manufactured by others". Id. at 409, quoted in Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 647 (6th Cir.), cert. denied, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).
 
 
 14
 In this circuit, equitable relief, such as a preliminary injunction, is available to a Lanham Act plaintiff upon demonstrating, at a minimum, a likelihood of confusion among consumers as to the origin of the goods and services provided by defendant resulting from the defendant's use of the disputed mark, as well as irreparable harm to the plaintiff's interests. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d at 647, 651. See also Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 833 (6th Cir.1983).
 
 
 15
 In Frisch's Restaurants, this circuit articulated eight factors for evaluating the "likelihood of confusion". 670 F.2d at 648. These factors are not immutable, but merely indicate the need for weighted evaluation of the pertinent facts in arriving at the legal conclusion of confusion. See Carson v. Here's Johnny etc., supra, 698 F.2d at 833 ("[i]n Frisch's Restaurants we approved the balancing of several factors.... In that case we examined eight factors" (emphasis added)). These factors were culled from the Ninth Circuit cases of AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir.1979), and Toho Company, Inc. v. Sears, Roebuck & Co., 645 F.2d 788, 790 (9th Cir.1981). They are:
 
 
 16
 1. strength of the plaintiff's mark;
 
 
 17
 2. relatedness of the goods;
 
 
 18
 3. similarity of the marks;
 
 
 19
 4. evidence of actual confusion;
 
 
 20
 5. marketing channels used;
 
 
 21
 6. likely degree of purchaser case;
 
 
 22
 7. defendant's intent in selecting the mark;
 
 
 23
 8. likelihood of expansion of the product lines.
 
 
 24
 The district court's factual findings as to the evidence supporting the eight factors addressing the issue of "likelihood of confusion" are subject to the clearly erroneous rule of appellate review. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d at 651. However, the evaluation of those findings is a question of law subject to de novo examination by the appeals court. Id., followed by Carson v. Here's Johnny etc., 698 F.2d at 833.
 
 
 25
 The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and, therefore, the more protection it is due. As stated in a modern legal treatise:
 
 
 26
 A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both.
 
 
 27
 Callmann, Unfair Competition, Trademarks & Monopolies, p 20.43 (4th ed. 1983).
 
 
 28
 In the case at bar, the district court concluded that the "Big Boy" mark was neither an indicator of origin nor distinctive, but was "a relatively weak mark". The "Big Boy" mark, the court explained, is owned by the Marriott Corporation which leases it to independent licensees throughout the country who obtain exclusive rights to the mark in particular areas. According to the lower court, the evidence disclosed that "each user of the Big Boy mark develops and operates its own system". As a result, "[t]here are substantial differences between each competitor's restaurants [and] [t]he only significant link ... is that each sells a double-deck hamburger called a Big Boy". In fact, the court noted that the various licensees deviated even in their formulas for the namesake sandwich. The "Big Boy" mark was thus used with products which lacked uniformity, and was therefore not distinct. It originated from various sources, and was therefore not a source indicator. As stated by the lower court (emphasis in original):
 
 
 29
 In the unusual structure created by Marriott, it is clear that the Big Boy mark does not serve as an indicator of a single source of origin.... Any confusion engendered by Marriott's own unique system of using the same mark on different "products" cannot be the basis for one competitor enjoining another from using its own mark, about which consumers are not confused.
 
 
 30
 On the appeal, Frisch's urges that the district court erred in its factual findings as to the strength of the "Big Boy" mark. The appellant's entire unexpurgated analysis of this issue is:
 
 
 31
 As noted earlier, the district court concluded that the Big Boy Mark "has never functioned, nor was it intended to function, as an origin-indicator for services." (Opinion p. 18.) The district court's conclusion is in direct conflict with the federal registration for the Big Boy service mark, Defendant's advertisements, billboards, license agreements and representations contained in its Uniform Franchise Offering Circular.
 
 
 32
 Brief of Appellant (5/9/84) at 29-30. It is true that the "Big Boy" mark has been registered as a service mark, but that does not negate the factual circumstances of this case wherein the lower court found that "Big Boy" did not act as a service mark. Frisch's notes that Shoney's advertised its Big Boy operations as "Shoney's Big Boy Restaurants". This reference, however, appears to errode Frisch's argument since the phrase could imply that Shoney's operated only those Big Boy Restaurants designated as Shoney's Big Boy Restaurants, thus emphasizing an independent "Shoney's" operation and diverse "Big Boy" operations. By emphasizing "Shoney's Big Boy Restaurants", as it did in its advertising, Shoney's has identified itself as the source of the services.
 
 
 33
 The district court's view of the commercial strength of the "Big Boy" mark is supported by the record. That the "Big Boy" mark is a weak service-origin mark is demonstrated by Frisch's own survey. For example, in Bowling Green, Kentucky [Frisch's territory], nearly 30% of the respondents identified "Jerry's", a local restaurant chain, as a "Big Boy Restaurant"; in Louisville the percentage was over 30%. In addition, the evidence indicated that Shoney's emphasized its own name in its advertisement of the Big Boy restaurants; in billboard's, for example, if the "Big Boy" words appeared at all they appeared in print up to 30 times smaller than the name "Shoney's".
 
 
 34
 Although, as Frisch's points out, there is evidence opposing the district court's conclusion, there is also sufficient evidence upon which the lower court anchored its decision. This court is therefore unable to conclude that the disposition of the trial court was clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 394-95, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948).
 
 
 35
 There is no dispute that the district court did not err in finding that the parties market similar goods. The district court identified the marks to be compared as "Shoney's" and "Big Boy". The lower court dismissed Frisch's argument that "Shoney's" and "Big Boy" should be considered as identical; the district judge observed that the identity, in the public mind, of "Shoney's" and "Big Boy" reflected the ultimate issue of consumer confusion. In putative rebuttal, on appeal Frisch's argues that the district court should have considered the two marks in their commercial context:
 
 
 36
 The entire thrust of FRISCH'S complaint is that the "Shoney's" and "Big Boy" service marks ... have become linked in the mind of a sizeable segment of the population in Defendant's licensed territories into which Defendant's reputation has spread. Viewing the marks in isolation and out of the context of their use over 25 years of course leads to the conclusion that the marks are "very dissimilar." However, such an abstract comparison ignores the realities of the marketplace and is an error of law.
 
 
 37
 Brief of Appellant (5/9/84) at 30. Thus Frisch's concedes that the "link in the mind of a sizable segment of the population" was the ultimate issue before the district court.
 
 
 38
 Obviously, Frisch's is correct that the resolution of this lawsuit depends upon the performance of the marks in the commercial context. This circuit has developed an elemental factual analysis to be superimposed upon what would otherwise be an entirely subjective reaction. Similarity represents only one element of the calculation which engages the judicial inquiry into the commercial performance of the marks. Within the context of this case the lower court's approach was not an error of law and the district judge's factual conclusion was not clearly erroneous.
 
 
 39
 As an adjunct to its attack on the lower court's decision on the similarity issue, Frisch's argues on appeal that the marks which should have been compared were "Shoney's Big Boy" and "Shoney's":
 
 
 40
 The residents of Bowling Green, Kentucky, Tallahasse, Florida and other communities on the fringes of Defendant's licensed Big Boy territory are familiar with Shoney's Big Boy. On seeing a restaurant in their community displaying the "Shoney's" name, the comparison they would make is between "Shoney's Big Boy" and "Shoney's". That is the comparison that is legally relevant.
 
 
 41
 Brief of Appellant (5/9/84) at 32-33. At first glance this argument is attractive. However, the charged infringing mark is "Shoney's Towne and Country", which Frisch's claims unfairly competes with the "Frisch's Big Boy" mark. Frisch's argues that theoretically "Shoney's" has become so notoriously associated with "Big Boy" beyond the former Shoney's license areas that mere use of the "Shoney's" mark in Ohio, Kentucky, Indiana and Florida invokes, for the public, the unspoken "Big Boy" mark. That is, as observed by the district judge, the ultimate issue in this case and Frisch's is not entitled to compel the trial court to presume a favorable conclusion during the step-by-step factual analysis leading to that conclusion.[1]
 
 
 42
 Although Frisch's has failed to cite them, appellee points out those cases which hold that in reviewing the similarity of marks the commercial context must be considered. "[I]n assessing the similarity of two marks, it is the effect upon prospective purchasers that is important." McGregor-Doniger Inc. v. Drizzle, Inc., 599 F.2d 1126 (2d Cir.1979). In those cases, however, the marks were facially similar. In McGregor the plaintiff's mark was "Drizzler", the defendant's was "Drizzle", and each was applied to a coat.
 
 
 43
 In McGregor the plaintiff was denied an injunction because its product was identified as the "McGregor Drizzler" while the defendant's merchandise displayed the "Drizzle" mark to identify Drizzle, Inc. as the source of the product, rather than as the name of a line of products. Similarly, in this case Shoney's used the "Shoney's" mark to identify itself as the source of the product line--in this case "Shoney's Big Boy" and "Shoney's Towne and Country" restaurants. Frisch's does not contest, and in fact insists, that the "Shoney's" name has become well known through a large portion of the country; the emphasis of the "Shoney's" mark over any subsidiary "product line" mark ("Big Boy", "Towne and Country"), therefore reduces the likelihood of confusion. Accordingly, even had the district judge erred in selecting the marks to be evaluated, the emphasis of the strong corporate name somewhat reduces, as in the McGregor case, the potential for confusion.
 
 
 44
 In considering the evidence demonstrative of actual consumer confusion this court is mindful of precedent that teaches that proof of actual confusion is not necessary to obtain injunctive relief in a Lanham Act case, but it is obviously the most probative proof of the likelihood of confusion. Amstar Corp. v. Domino's Pizza Inc., 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). The district court's evaluation of the evidence of actual confusion is a factual inquiry subject to the clearly erroneous rule. Frisch's Restaurants, Inc. v. Elby's Big Boy, etc., supra. See Alpha Industries v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440 (9th Cir.1980).
 
 
 45
 To support its claim of consumer confusion, Frisch's presented a marketing survey designed and supervised by an Ohio State University professor, Dr. Lee Becker. Dr. Becker, who also testified at the hearing, gathered the survey data through telephone interviews with over 3,000 residents of seven communities. The lower court's recognition of Dr. Becker as a qualified expert in the field of scientific survey is not disputed on the appeal. The trial court, however, determined that the survey was defective and therefore assigned little weight to its evidentiary value in support of the issue of actual conclusion to which finding Frisch's strenuously took exception. The lower court stated:
 
 
 46
 The factors that the Court finds discredit the accuracy of the survey results are as follows: First, the Court finds there is some merit in Shoney's position that the relevant universe defined by Dr. Becker was inappropriate. Dr. Becker defined the universe for his survey as the populations of seven communities. The sample to be surveyed was randomly selected from the telephone directories for those communities. While in some instances (e.g., Ironton, Ohio), the telephone directory included in one listing not only the primary but the surrounding communities, other telephone directories (e.g. Bowling Green, Kentucky) listed separately the residents of the primary community and each surrounding community. In the former instances, Dr. Becker drew his sample from both the primary and surrounding communities since the residents were listed together. In the latter instances, however, Dr. Becker drew his sample from only the primary community and excluded the surrounding communities. Although Dr. Becker testified that one reason for excluding certain communities was their relative distance from the primary community, the Court is not satisfied that Dr. Becker sufficiently familiarized himself with the geographics of the communities involved to base his decision on this ground but relied, instead, solely on the telephone company's definition of a certain community. The Court finds that this somewhat arbitrary method of selecting a sample detracts from the validity of the survey results. Indeed, Dr. Becker himself recognized that the exclusion of certain communities from the population group could have affected the results of the survey.
 
 
 47
 Second, the Court also finds merit in Shoney's argument that the survey instrument itself renders the survey results invalid. The Court is particularly disturbed by the survey's use of the term "Big Boy Restaurant" in three key questions. First of all, Dr. Becker himself conceded that the term Big Boy Restaurant is an ambiguous term in that it means different things to different people. More importantly, however, is the fact that the use of the term may well have instilled in the respondents the false impression that there exists some sort of chain of restaurants called "Big Boy Restaurants". These questions, therefore, taint the results of the survey since the extent to which Big Boy functions as an indicator of source of services is an issue very central to this case. The Court agrees with defendant that "[b]y telling the respondent that there is such a thing as a Big Boy Restaurant, Dr. Becker is implying to the respondents that Big Boy functions as an indicator of source of services, and not just as a source of a hamburger."
 
 
 48
 Finally, the Court is concerned about the extent of participation in this survey by Frisch's counsel. Without in any sense meaning to impugn the integrity of plaintiff's counsel, a highly respected and extremely able attorney, the Court finds that the survey, rather than being totally neutral as to each side in this litigation, tends to reflect an advocate's point of view. Although Dr. Becker testified that he retained final authority over the survey, the Court concludes, considering both Dr. Becker's testimony as well as the survey instrument itself, that Dr. Becker's contacts with plaintiff's counsel unduly influenced his approach to the formulation of the survey instrument.
 
 
 49
 Although no one of the above weaknesses standing alone may have unduly discredited the results of plaintiff's survey, their cumulative effect brings into serious doubt the validity of the results of the survey. The Court concludes, therefore, that plaintiff having failed to sufficiently demonstrate the validity of their survey instrument and the implementation thereof, the survey results admitted into evidence can be given little, if any, weight.
 
 
 50
 The district court's criticism of Dr. Becker's reliance upon telephone listings to identify members of communities in which target restaurants were located is not persuasive. The restaurant locations were known and the decision to limit the respondent field to the main community as identified by the telephone listings is not suspect of itself. Further, the record lacks any evidence indicating that the survey failed to identify likely consumers. As to the lower court's holding that the survey was unduly influenced by counsel, the court did not articulate its basis for that conclusion and the record is void of supportive evidence.
 
 
 51
 The lower court's observation that the survey predisposed respondents to identify "Shoney's Towne and Country" restaurants as "a" "Big Boy Restaurant" does hit the mark. As noted by appellee, the survey mentions "Big Boy Restaurants" three times before the inquiry regarding the relationship of Shoney's. See Appendix Volume B: Plaintiff Exhibits at 358 (Ex. 28). The objectionable questions were:
 
 
 52
 19. Now I'm going to read you the names of some restaurants. Please tell me if you have ever heard of this restaurant before?
 
 
 53
 a. Burger King
 
 
 54
 b. Red Lobster
 
 
 55
 c. Big Boy
 
 
 56
 d. Pizza Hut
 
 
 57
 e. Captain D's
 
 
 58
 20. Now I'd like to know if each of the restaurants I mention is located in your community. Is there a ________ restaurant in the Bowling Green area, that is within 5-10 miles of the city.
 
 
 59
 a. Burger King
 
 
 60
 b. Red Lobster
 
 
 61
 c. Big Boy
 
 
 62
 d. Pizza Hut
 
 
 63
 e. Captain D's
 
 
 64
 21. Is there some other name or names you associate with the Bowling Green Big Boy Restaurant? If so, what is the name?
 
 
 65
 22. Now I'm going to name some restaurants. Please tell me if the restaurant I name is a Big Boy Restaurant. If you don't know the answer, just tell me. Is ________ a Big Boy Restaurant?
 
 
 66
 a. McDonalds
 
 
 67
 b. Burger King
 
 
 68
 c. Shoney's Towne and Country
 
 
 69
 d. Hardee's
 
 
 70
 e. Frisch's
 
 
 71
 f. Jerry's
 
 
 72
 23. Please tell me all of the restaurant names which come to mind when I say the name Big Boy Restaurants?In the four questions, ending with questions 22c, the interviewee was confronted with the "Big Boy" name six times before the answer to the inquiry if "Shoney's Towne & Country" was a "Big Boy" restaurant was required. The formulation of the questions had firmly created a mindset in the interviewee that "Big Boy" was a restaurant name, such as Burger King, and the subsequent interview questions predetermine that consumers who were familiar with "Shoney's Big Boy" outlets would conclude that any "Shoney's" was a "Big Boy". This technique is characterized as "aided awareness" questioning; in effect it "sets up" the desired response and therefore has been justly criticized and accorded diminished probative value. See Sears, Roebuck & Co. v. All State Life Ins. Co., 246 F.2d 161 (5th Cir.1957); Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 533 F.Supp. 75 (S.D.Fla.1981); Scott Paper Co. v. Scott's Liquid Gold, Inc., 439 F.Supp. 1022 (D.Del.1977). Its effect in this case is dramatically illustrated by an examination of plaintiff's exhibit 14, see Appendix Volume B: Plaintiff's Exhibits, at 319, which was a summary of responses to questions 21, 22 and 23.
 
 
 73
 Question 21 inquired if there were any names the consumer associated with the local "Big Boy Restaurant". Question 22 then specifically inquired if "Shoney's Towne & Country" was a "Big Boy Restaurant".[2] The positive identification of Shoney's in each of the questions under review in each of the cities surveyed was as follows[3]:
 
 
 74
 To be sure, the same aided awareness effect may be observed with respect to the public's identification of Frisch's with "Big Boy":
 
 Bowling
 
 75
 Q. Ashland Ironton Green Louisville Jacksonville Tallahassee Nashville
 
 
 76
 21 28.8% 21.6 2.0 34.6 2.0 35.0 0.2
 22 65.9% 79.8 41.4 76.7 19.9 61.0 17.8
 
 
 77
 On the average, in cities in which "Shoney's Big Boy" did not operate, the level of identification of "Shoney's" as a "Big Boy" doubled from question 21 to question 22 (from an average 19.53% identification in 21, to 48.15% in 22). The district court legitimately concluded, after evaluating this evidence and the testimony of Dr. Becker in defense of the survey, that the measure of actual consumer confusion had not been accurately gauged by this survey. Therefore it was not clear error to discount the probity of this survey.
 
 
 78
 The district court found that the parties utilized similar marketing channels to promote their merchandise and that the likely degree of purchaser care in selecting one fast food franchise over another was "undoubtedly not very high" because of the small monetary expenditure involved.
 
 
 79
 On the issue of intent, the district judge determined that there was no evidence of a bad or fraudulent intent on the part of Shoney's. The lower court also distinguished the prior case of Frisch's v. Elby's, supra, on the basis of intent. In Frisch's v. Elby's, Elby's had undertaken to associate it's non-Big Boy outlets with its licensed Big Boy restaurants in a territory adjacent to its independent operations. Here, the district court observed Shoney's did not attempt any such association and had, in fact, undertaken to deemphasize the "Big Boy" mark in its own territory. The district judge specifically relied on the Ninth Circuit opinion in Shakey's Inc. v. Covalt, 704 F.2d 426 (9th Cir.1983), as further support for its evaluation. The district court stated:
 
 
 80
 As the Ninth Circuit Court of Appeals stated in Shakey's, the law of unfair competition does not impose upon Shoney's the duty to ensure that all its customers are aware its Towne & Country restaurants are not affiliated with the Big Boy mark, but merely a duty not to promote a perpetuation of any perception that they are so affiliated. 704 F.2d at 432. Shoney's has not, unlike Elby's, acted to perpetuate any false impressions that consumers might have. To the extent there may exist a spill-over effect from any continuing or past use by Shoney's of the Big Boy mark in other states ... such effect is not a sufficient basis for a finding of "intentional unauthorized association."
 
 
 81
 (Citation omitted). This court concurs in this analysis. The district judge performed an exhaustive review of the confusion issue and without error--clear or otherwise--in his conclusions.
 
 
 82
 On this record, the district court's conclusion that "Frisch's has not met its burden of demonstrating a likelihood of success" was correct. Of course, a finding that a party was not "likely to prevail" on the merits would not preclude a court from the exercise of its discretion to issue a preliminary injunction, see In re DeLorean Motor Co., supra, if the movant "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued". Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982), quoted in In re DeLorean Motor Co., supra.
 
 
 83
 However, Frisch's has not shown any irreparable harm it would suffer which would "decidedly outweigh" the prospective harm to Shoney's if the injunction were to issue. Under the requested injunction Shoney's would have to revamp, close, or halt construction on its "Shoney's Towne & Country" operations at substantial costs and injury to its business. Where the burden of the injunction would weigh as heavily on the defendant as on the plaintiff, the plaintiff must make a showing of at least a "strong probability of success on the merits" before a trial court would be justified in issuing the order. See In re DeLorean Motor Co., supra (and cases cited therein); Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. H.E.W., 418 F.Supp. 585, 586 (E.D.Mich.1976).
 
 
 84
 The district court concluded a comprehensive review and insightful analysis of a voluminous record and offered a soundly reasoned denial of the motion for a preliminary injunction. The trial court clearly acted within its discretion and authority. In accord with a strict policy of deference to such decisions, it is affirmed.
 
 
 85
 On April 13, 1984, after the appeal had been taken but prior to the argument, Shoney's and Marriott (owner of the "Big Boy" mark) entered into an agreement whereunder Shoney's abandoned its right to use the "Big Boy" mark in any territory. Shoney's argued that Frisch's case was thereby mooted citing to Shakey's Inc. v. Covalt, 704 F.2d 426 (9th Cir.1983) for the proposition that "there now is no association with 'Big Boy' to enjoin other than Shoney's past association which ... is legally insufficient to support a cause of action". Brief of Appellee (6/12/84) at 12. This court granted Shoney's motion to supplement the record with evidence of the April 13, 1984 agreement and the issue of mootness was therefore joined for disposition by this panel.
 
 
 86
 Upon review the panel concludes that the lawsuit has not been mooted. In Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir.), cert. denied, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982), the defendant Elby's was, like Shoney's in this case, a former licensee of the "Big Boy" mark. By ruling that Frisch's had stated a cause of action, this court in Frisch's v. Elby's at least implicitly ruled that a current licensee could initiate an action for infringement against a former licensee. This court reaffirms that conclusion.
 
 
 87
 In the case at bar, Frisch's theory is that Shoney's has impermissably traded on the reputation of "Big Boy" to the detriment of Frisch's. That theory remains viable despite the subsequent contractual disassociation.
 
 
 88
 Consistent with the foregoing, the district court is affirmed and this case is remanded for further proceedings.
 
 
 89
 CORNELIA G. KENNEDY, Circuit Judge, concurring.
 
 
 90
 I agree with the majority of the panel that the District Court was not clearly erroneous in finding that the market survey did not properly measure consumer confusion.
 
 
 91
 I write separately because I do not believe the majority has fully considered Frisch's theory with respect to confusion. Frisch's argues that consumers will be confused because they so strongly associate the name "Shoney's" with "Big Boy" that they will also assume that "Shoney's Towne and Country" is also licensed by or associated with "Big Boy". The majority agrees with the District Court that "Big Boy" is a weak mark. A mark that designates the source is a strong mark, and I agree that "Big Boy" does not strongly designate the source. However, the confusion that is claimed here is not just confusion over the source--it is confusion over whether a particular source is associated with the national "Big Boy" trademark. "Big Boy" is a strong mark in the sense that it is "highly distinctive." The two marks that need to be compared here are "Shoney's Big Boy" and "Shoney's Towne and Country". Frisch's argues that a consumer seeing "Shoney's Towne and Country" will think of "Shoney's Big Boy", a mark which Shoney's cannot use in states in which Frisch's has the exclusive right to the "Big Boy" mark. The majority reasons that the strength of the name "Shoney's" reduces the possibility of confusion. However, when we consider Frisch's association theory and compare the two marks, the strength of the name "Shoney's", which is common to both, increases the similarity and thus the likelihood of associating the two marks.
 
 
 92
 I would permit Frisch's to pursue its theory of confusion by association. This type of "likelihood of confusion" depends on the existence of actual consumer confusion, however. I agree with the majority's analysis of the consumer survey presented by Frisch's and the conclusion that Frisch's has not established a sufficient likelihood of success on the merits to require issuance of a preliminary injunction. I therefore concur in the majority opinion with the exception of its analysis of the strength and similarity of the marks.
 
 
 
 [1]
 In passing, it might be observed that Frisch's has diluted its own position by arguing that "Shoney's" is so strong a mark that its influence extends beyond "Shoney's Big Boy Restaurants". If, as determined by the trial court, "Big Boy" is a weak mark as a result of the licensing scheme adopted by Marriott, and "Shoney's" is a stronger, more dominant mark, then it would appear that the name "Shoney's" is entitled to more protection than "Big Boy" mark
 
 
 [2]
 It might be observed that Question 22 was constructed so that the respondent was first asked if McDonald's or Burger King were "Big Boy Restaurants". These "obvious no" answers could conceivably have influenced the respondent to answer yes to the "Shoney's Towne & Country" question in a desire to give a "correct" answer
 
 
 [3]
 Of the cities, only in Nashville did "Shoney's Big Boy" operate; there are, in fact, a large number of "Shoney's Big Boys" in that city
 Bowling
 Q. Ashland Ironton Green Louisville Jacksonville Tallahassee Nashville
 
 
 [21]
 21.6% 25.9 27.1 10.7 13.4 18.5 67.8
 22 48.8% 63.6 57.2 44.1 39.4 35.8 91.5